## STEELMAN, TRUSTEE IN BANKRUPTCY, *v.* ALL CONTINENT CORP.

No. 638. Argued March 29, 30, 1937.—Decided April 26, 1937.

---

[10] *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86, 108–111; *Nash* v. *United States,* 229 U. S. 373, 376–378.

*Mr. Wm. D. Whitney,* with whom *Messrs. Wm. Elmer Brown, Jr.,* and *C. Brewster Rhoads* were on the brief, for petitioner.

*Mr. Murry C. Becker,* with whom *Mr. Benjamin Reass* was on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The question is one as to the power of a court of bankruptcy, in the situation developed in the record, to enjoin the prosecution of a suit in another federal court upon the ground that the suit, if pressed to a decree, may thwart an inquiry into frauds charged against the bankrupt, or make relief against them difficult.

William Fox was adjudicated a bankrupt on May 29, 1936, in the United States District Court for the District of New Jersey. On the petition of two creditors an order

was made under § 21a of the Bankruptcy Act (11 U. S. C. § 44a) for the examination of All Continent Corporation (a Delaware corporation), its president Eva Fox, who was also the bankrupt's wife, his daughters, and other witnesses. The wife refused to submit to examination, and was cited for contempt. When this record was made up, the proceeding to punish her was still undetermined. Meanwhile the examination proceeded with the aid of the witnesses responding to the order. After seventeen or more hearings the Referee made an order on August 18, 1936, whereby All Continent Corporation was directed to deliver all its books and records to the trustee in bankruptcy (petitioner in this court) for examination and audit. As a basis for the order, which was confirmed by the court with unimportant changes (*In re Fox*, 16 F. Supp. 950), the Referee certified the facts as they had been developed through the evidence before him. By this it appeared that All Continent Corporation was the creation of the bankrupt himself, who had supplied every dollar of its capital; that in doing this he had divested himself of a substantial portion of his property; that the entire capital stock, then claimed by his wife, had been kept in his name upon the corporate books; that he had retained in his possession and under his control the assets of the corporation, made up of securities, and had dealt with them on many occasions as if they were his own; that he held a power of attorney, broad in its terms, authorizing him to act for the corporation in the transaction of its business; that such books and records as were already in evidence disclosed disbursements for his account, discrepancies between the entries and those in his private books, and also erasures, corrections and interlineations affecting the scrutinized transactions, as well as sales to the corporation on the eve of bankruptcy. In the view of the Referee, this chain of facts, combined

with many others in the testimony before him, was proof "that the affairs of the All Continent Corporation were so related to and intertwined with the property and affairs of the bankrupt" as to show the need for an exhaustive examination and audit of all the documents available.

The enforcement of the order for the production of the books and records was stayed by the District Court until September 9, 1936. On that day the trustee was served in New Jersey with a subpoena and bill of complaint in a suit in the United States District Court for the Eastern District of Pennsylvania. The complainant named in the bill was the All Continent Corporation, which had already filed a proof of claim against Fox in the bankruptcy proceeding; the defendants were the members of the partnership of J. W. Sparks & Company, with whom were joined as absentee defendants, Capital Company, a corporation, and the petitioner in his capacity as trustee of the estate. The suit was brought under § 57 of the Judicial Code (28 U. S. C. § 118) to remove a cloud upon the title to personal property claimed by the complainant. The trustee not being "an inhabitant of or found within" the district of the suit, an order directing him to plead was served upon him in New Jersey after the service of the bill. Judicial Code, § 57; 28 U. S. C. § 118. The cloud to be removed had its origin in a third party subpoena issued out of a federal court in New York in proceedings supplementary to judgment. Capital Company, a corporation, had recovered a judgment against Fox before he became bankrupt. A proceeding supplementary to judgment was begun, and we know from our records that Fox refused to appear and was fined for contempt. *Fox* v. *Capital Co.,* 299 U. S. 105. In aid of the same judgment, a third party subpoena was served upon Sparks & Co., stockbrokers residing in Philadelphia

and there engaged in business. These brokers had upon their books an account in the name of All Continent Corporation, in which Fox was believed to have an interest as owner. The securities held in that account had a value in excess of half a million dollars, subject to a debit balance. To enable the judgment creditor to reach any equity in those securities belonging to the debtor, the subpoena served upon the brokers was accompanied by a notice, which in effect was an injunction (New York Civil Practice Act § 781), restraining them from disposing of the property of William Fox until the further order of the court. The validity of the injunction, though challenged by the brokers, was upheld upon appeal. *Capital Co.* v. *Fox*, 85 F. (2d) 97. Because of that restraint, Sparks & Co. refused to permit any securities to be withdrawn from their custody or otherwise disposed of, having notice of the claim that, irrespective of the form of the account, the securities belonged to Fox. Anxious to resume the control of the securities, All Continent Corporation sued in Pennsylvania to establish title to the *res.* Capital Company was stated in the bill to have created a cloud upon the title by issuing the third party subpoena with the accompanying injunction. The trustee in bankruptcy was stated to have helped to create the cloud by joining with Capital Company in a request that the subpoena be continued after the bankruptcy petition. Relief was demanded decreeing All Continent Corporation to be the owner of the securities and entitled to possession upon payment of the debit balance owing to the brokers.

The trustee in bankruptcy upon service of the bill of complaint petitioned the court of bankruptcy that it stay the prosecution of the suit in Pennsylvania. The petition for a stay was granted. The opinion of the District Judge (16 F. Supp. 949) states that a grave question has arisen as to the ownership of the assets and shares of

All Continent Corporation. Litigation as to such ownership "ought to be conducted by trustee after there has been a full and complete disclosure of the facts in the 21 (a) examinations." "To require the trustee to appear and defend that suit [i. e., the suit in Pennsylvania] . . . would interfere materially with proper administration." Further prosecution against him was accordingly restrained.

From that decree All Continent Corporation appealed to the United States Circuit Court of Appeals for the Third Circuit. By consent of the parties the court made an order including three additional documents in the transcript of the record: (1) the bill of complaint in a suit in the Court of Chancery in New Jersey; (2) an order to show cause for an injunction *pendente lite* and the appointment of a receiver; and (3) the answer of Sparks & Co. in the suit in Pennsylvania. The suit in the New Jersey Chancery was brought by the trustee in bankruptcy against the bankrupt William Fox, his wife, his daughters, his grandchildren, and the All Continent Corporation. The bill was filed within a week from the date of the restraining order. It charges fraud in the transfer of securities and other assets to the corporation at the time of its creation and also at later dates. It charges fraud in the assignment of the shares of the corporation by Fox to his wife, partly for her own benefit and partly for the benefit of children and grandchildren. It charges fraud in the opening of accounts with stockbrokers, ostensibly for the use of the corporation itself, but really for the use of Fox alone. All these transactions are stated to have occurred in execution of a unitary scheme, to which Fox, his wife and children and the corporation were parties in its several manifestations, for the hindrance of creditors in the enforcement of their rights and remedies. A decree is prayed enjoin-

ing the corporation from disposing of its assets, appointing a receiver to manage and preserve them during the pendency of the suit, annulling all the transfers tainted by the fraud, and decreeing a trust for the benefit of the bankrupt and through him for the trustee. Upon the filing of the bill the Chancellor made an order to show cause why a receiver should not be appointed, and he enjoined in the interim any transfer of the assets. One other document, as we have indicated, was added to the transcript. This was the answer of Sparks & Co. in the suit in Pennsylvania. In that answer they state the acceptance of securities from All Continent Corporation without notice that Fox or others had any interest therein; the existence of a debit balance of $308,-764.97; the readiness of the customer to pay the debit balance on the return of the securities; and the hardship to the brokers involved in continuing the account with all the risks incidental to future changes in the market.

Upon the record thus supplemented the Court of Appeals considered the appeal. 86 F. (2d) 913. It said that "the real question in issue here is whether or not the New Jersey court [i. e., the court of bankruptcy in New Jersey] had the power to enjoin the appellant from prosecuting its suit, under the facts in this case, in the Pennsylvania court." It ruled that "the Pennsylvania court, having first acquired jurisdiction of the property and controversy, is entitled to exclusive jurisdiction, and the institution of the suit in chancery was an attempt to oust the Pennsylvania court of the jurisdiction which it had previously and validly acquired." It coupled that ruling with the statement that the corporation would be entitled "upon proper application" to "restrain the trustee from litigating the controversy elsewhere." It found in the suit in the New Jersey Court of Chancery two separable controversies, one between the trustee and All

Continent Corporation, the other between the trustee and the members of the Fox family, the corporation being stated to be the only necessary party defendant to the first controversy and the Fox family the only necessary parties defendant to the other. It concluded that upon the facts exhibited "the District Court of New Jersey did not have the power to restrain the suit which the statute clearly authorized to be brought in the Pennsylvania court." The decree of the court of bankruptcy was accordingly reversed. The question of power being important, we granted certiorari.

All Continent Corporation, if there is truth in the charges made by the trustee, is a party to a conspiracy to cover up the bankrupt's assets and keep them from his creditors. In that view of the facts, the suit in Pennsylvania will be a step in fulfilling the conspiracy, and may even crown it with success. The inquiry into the fraud, an inquiry going forward in orderly fashion under the supervision of the court of bankruptcy, will be transferred to another jurisdiction with the supposed fraudulent grantee as *dominus litis*. In such a suit there is danger that the issues to be tried may be so narrowly restricted as to shut out the light. All Continent Corporation may be shown to have the legal title to the securities in the keeping of its brokers. If so, it may be adjudged in a controversy with the brokers to be entitled to possession, though its own shares are subject to a secret trust for the benefit of the bankrupt. There will be an absence of the parties without whom the adjudication of such a trust will be indecisive and perhaps impossible. If assignments of the shares have been made by the bankrupt to his wife for his own use or for hers or for the use of children and other relatives, the invalidity of such assignments may not be open to decision unless the assignees of the shares are brought before the

court. Choses in action and other equitable assets, even though fraudulently transferred, are not subject at common law to seizure under execution at the instance of a creditor, but the transfer must be avoided by a decree in equity. *Stephens* v. *Cady,* 14 How. 528, 531; *Freedman's Savings & Trust Co.* v. *Earle,* 110 U. S. 710, 712; *Anthony* v. *Wood,* 96 N. Y. 180, 185; *American Surety Co.* v. *Conner,* 251 N. Y. 1, 5, 6; 166 S. E. 783. The need for a decree is no less obvious and settled when title is to be reclaimed at the suit of a trustee. There are times, it is true, when a trustee may have the benefit of a summary order for transfer or surrender, but this will never happen as to property out of his possession unless the adverse claim of title is colorable only. *Taubel Co.* v. *Fox,* 264 U. S. 426, 431, 433, 434; *May* v. *Henderson,* 268 U. S. 111, 115; *Galbraith* v. *Vallely,* 256 U. S. 46, 50; *Taylor* v. *Sternberg,* 293 U. S. 470, 473. Quite as much as any creditor, the trustee may thus be helpless to vindicate his equities in the suit in Pennsylvania, the parties being what they are. Other difficulties will remain if these can be surmounted. The bankrupt's wife may absent herself from the trial, just as she has refused to submit to examination in the bankruptcy proceeding, with the result that the investigation of the equities may be partial or abortive. Other witnesses may do the like. The danger of frustration by such means will be much greater in a suit by All Continent than in one by the trustee, an officer of the court. In the end a fraudulent grantee may gain possession of the securities with power to distribute them among the members of the bankrupt's family, and to do this, moreover, under cover of a decision which will breed confusion and uncertainty in other suits to follow.

All these embarrassments and obstacles will be removed at a single stroke if the bankruptcy court is free from vexatious interference in its task of supervising and

controlling the administration of the assets. The facts may then be uncovered without haste or impediment by continuing the examination under § 21a. A plenary suit may be brought with the trustee in control to ascertain the legal and the equitable interests in All Continent's assets and also in its shares of stock. All persons whose interests will be affected by an appropriate decree, and particularly the members of the bankrupt's family, adverse claimants to the shares, may be joined as defendants, as indeed they have been joined already in the New Jersey Court of Chancery. To avoid the fraudulent or improvident exercise of dominion by the holder of the legal title, an injunction may be granted restraining the transfer of the assets until the issues have been determined. To avoid loss or hardship either to stockbrokers or to others by tying up accounts without opportunity for release a receiver may be appointed with power to manage such accounts and preserve the assets generally. All these forms of relief and others ancillary thereto will be well within the powers of a court of equity if a suit is maintained in the name of the trustee with the corporation, the bankrupt and his family parties to the record. The suggestion will not hold that the controversy between the trustee and the corporation has no connection with the controversy between the trustee, the bankrupt and his relatives. Cf. *Graves* v. *Corbin,* 132 U. S. 571. On the contrary, the remedy against the bankrupt and his relatives is likely to be truncated and inadequate unless accompanied by an injunction and a receivership which will bind the corporation, its officers and agents. The suit in the New Jersey Court of Chancery, which the court below has erroneously characterized as one that should be restrained because brought after notice of the suit in Pennsylvania, will supply an appropriate and convenient medium for the litigation of these issues if it is permitted to go forward.

The decision under review, which gives free rein to the prosecution of the suit in Pennsylvania, is built on the assumption that in the circumstances exhibited there is no power to apply a curb. The court has not found that discretion was abused or improvidently exercised if power was not lacking. This is plain from the opinion. It is made plainer, if that be possible, by the argument of counsel for the corporation, the respondent in this court, disclaiming any effort to uphold the decision in his favor in the absence of defect of power. With the controversy thus narrowed the path is cleared to a conclusion. For reasons already indicated there was probable cause for the belief that the suit in Pennsylvania would be a step in the execution of a fraudulent conspiracy, impeding and perhaps frustrating the administration of the assets. There was probable cause for the belief that only through a suit upon the lines of the one in the New Jersey Chancery could the danger of obstruction be averted and the estate be kept intact until the entry of a decree adjudging the guilt or innocence of the putative conspirators. Whether they are innocent or guilty is a question not before us now. The data for the formation of any opinion on the subject have not yet been supplied. At present our inquiry halts with the discovery of probable cause for preserving the estate from dismemberment or waste through a precipitate decision. If such cause has been made out, we think the court of bankruptcy has been armed with abundant power to preserve the *status quo* until there can be an adequate trial with all the necessary parties and a judgment on the merits.

The Judicial Code provides (§ 262; 28 U. S. C. § 377) that the United States courts "shall have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and principles of law."

The Bankruptcy Act reinforces that authority by providing (§ 2 (15); 11 U. S. C. § 11 (15)) that courts of bankruptcy are invested with jurisdiction "at law and in equity" to "make such orders, issue such process and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title." Referring to these statutes, this court has said that "the power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is . . . inherent in a court of bankruptcy, as it is in a duly established court of equity." *Continental Bank* v. *Chicago, R. I. & P. Ry.*, 294 U. S. 648, 675. Cf. *Local Loan Co.* v. *Hunt*, 292 U. S. 234, 240, 241; *Kline* v. *Burke Construction Co.*, 260 U. S. 226, 229; *Looney* v. *Eastern Texas R. Co.*, 247 U. S. 214, 221. Jurisdiction to administer the estate draws to itself, when once it has attached, an incidental or ancillary jurisdiction to give protection to the estate against waste or disintegration while frauds upon its integrity are in process of discovery. This power so obviously necessary to the attainment of the ends of justice has been exercised by the lower federal courts in a great variety of circumstances. There have been orders directing payment of moneys into the registry of the court until a plenary suit can be brought to recover them (*In re Mitchell*, 278 Fed. 707), restraining an adverse claimant from disposing of property in advance of a decree (*In re Norris*, 177 Fed. 598; *Pyle* v. *Texas Transport & Terminal Co.*, 185 Fed. 309), and enjoining possessory actions that might jeopardize relief in equity. *In re Republic Plumbing Supply Corp.*, 295 Fed. 573; cf. *Blake* v. *Nesbet*, 144 Fed. 279; *In re Blake*, 171 Fed. 298; *In re Nathan Turim, Inc.*, 55 F. (2d) 672. If suits can be enjoined when they are found to have a tendency to embarrass administration, *a fortiori* this may be done when there is a basis for the

fear that they will be used as instruments or devices to render fraud triumphant. Not improbably the order in this case might better have imposed a condition that a plenary suit must be brought within a reasonable time. This defect, if it be one, is now of no importance, for by concession such a suit was brought within a week. There will be no occasion for delay if the corporation, the bankrupt and his family will coöperate in working for a quick decision. In such circumstances there can be no wrong or prejudice to All Continent by postponing its suit in Pennsylvania to a more comprehensive and efficient remedy that will put conflicting claims at rest. Cf. *Wehrman* v. *Conklin,* 155 U. S. 314, 329. Delay and expedition will be subject to the control of equity. "In that predicament the malleable processes of courts of bankruptcy give assurance of a remedy that can be moulded and adapted to the needs of the occasion." *Brown* v. *O'Keefe,* 300 U. S. 598.

Much of the argument for the respondent has been directed to a showing that the suit in Pennsylvania is not subject to restraint for defect of jurisdiction, and this for the reason that the *res* to be affected—the securities held by Sparks & Co. in their office in Philadelphia—had not come within the actual or constructive possession of the court of bankruptcy in New Jersey when the suit was begun to remove the cloud upon title. Cf. *Fort Dearborn Trust & Savings Bank* v. *Smalley,* 298 Fed. 45; *Molina* v. *Murphy,* 71 F. (2d) 605; *In re Adolf Gobel, Inc.,* 80 F. (2d) 849. The argument misconceives the grounds upon which the trustee looks to us for aid. The trustee does not challenge the jurisdiction of the federal court in Pennsylvania, if the word jurisdiction be taken in its strict and proper sense. Cf. *Straton* v. *New,* 283 U. S. 318, 321; *Isaacs* v. *Hobbs Tie & Timber Co.,* 282 U. S. 734, 737, 738. He is not seeking a writ of prohibition directed

to the court itself. He is not seeking an injunction to vindicate his exclusive control over a *res* in his possession, or in the possession, actual or constructive, of the court that appointed him. *Isaacs* v. *Hobbs Tie & Timber Co., supra; Murphy* v. *John Hofman Co.,* 211 U. S. 562, 568, 569; *Moran* v. *Sturges,* 154 U. S. 256, 274. What he seeks is an injunction directed to a suitor, and not to any court, upon the ground that the suitor is misusing a jurisdiction which by hypothesis exists, and converting it by such misuse into an instrument of wrong. *Gage* v. *Riverside Trust Co.,* 86 Fed. 984, 998, 999; *Higgins* v. *California Prune & Apricot Growers,* 282 Fed. 550, 557; *Cole* v. *Cunningham,* 133 U. S. 107, 112, 117, 118. Suits as well as transfers may be the protective coverings of fraud. *Shapiro* v. *Wilgus,* 287 U. S. 348, 355. We are unable to yield assent to the statement of the court below that "the restraint of a proper party is legally tantamount to the restraint of the court itself." The reality of the distinction has illustration in a host of cases. 2 Story, Eq. Jur., 14th ed., § 1195; 5 Pomeroy, Eq. Jur., § 2091; *Cole* v. *Cunningham, supra; Madisonville Traction Co.* v. *Mining Co.,* 196 U. S. 239, 245; *Kessler* v. *Eldred,* 206 U. S. 285; *Rickey Land & Cattle Co.* v. *Miller & Lux,* 218 U. S. 258; *Toledo Scale Co.* v. *Computing Scale Co.,* 261 U. S. 399, 426; *Smith* v. *Apple,* 264 U. S. 274, 279. Cf. Judicial Code, § 265; 28 U. S. C. § 379; *Brown* v. *Pacific Mutual Life Ins. Co.,* 62 F. (2d) 711, 713; *Chicago Title & Trust Co.* v. *Fox Theatres Corp.,* 69 F. (2d) 60, 61, 62.

The decree of the Court of Appeals is reversed and that of the District Court affirmed.

*Reversed.*