**DROESE, Bankrupt, In re.**

United States District Court N. D. Ohio, E. D.

No. 70649. Decided January 25, 1954.

Marvin L. Gardner, Cleveland, trustee.
William W. Weltz, Cleveland, for bankrupt.

## OPINION

By FRIEBOLIN, Referee.

The bankrupt having failed to pay the filing fee of $45, contends, and the trustee does not object, that the sum of $45 should be paid out of the estate since the trustee collected $122.29 from bankrupt's employer upon a garnishment of bankrupt's wages pending at bankruptcy, which garnishment was declared void by virtue of Section 67a of the Act.

In fact, the bankrupt in his affidavit, alleging inability to pay, filed with his voluntary petition, stated that he would pay the filing fee out of the money so collected by the trustee.

I find no warrant for such procedure in the Act or General Orders. In my judgment, the bankrupt is required to pay the filing fee of $45

regardless of any assets in the estate. The law seems to be abundantly clear that every voluntary bankrupt in strict bankruptcy—as well as petitioning creditors in involuntary cases—is required to pay to the clerk, the filing fee of $45. Whether the trustee collects any funds for the estate is wholly irrelevant.

However, it is true that where there are assets in the estate, (1) petitioning creditors in involuntary cases, and (2) persons **other** than the bankrupt in voluntary cases who have paid the $45 filing fee, may be reimbursed. Section 64a (1) expressly so provides. (Emphasis added.)

Section 40c (1) provides that, except as otherwise provided in the Act, there **shall** be deposited with the clerk, at **the time the petition is filed** in each case (a) $17 for the referee's salary fund and (b) $15 for the referee's expense·fund. Provided, however, that in cases of voluntary bankruptcy, such fees ($32) **as well** as the filing fees of the **clerk** ($8)[1] and **trustee** ($5)[2] may be paid in installments if so authorized by General Order.

Section 51 provides that the clerk shall:

"(2) collect the fees of the **clerk** and **trustee** and the fees for the **referee's salary** fund and referee's **expense** fund—**in each case instituted** before filing the petition except where installment payments may be authorized pursuant to Sec. 40 of the Act * * *."

Section 64a (1) provides among items of first priority out of the funds of the estate "the filing fees paid by creditors in involuntary cases or by persons other than the bankrupts in voluntary cases."

From these provisions of the Act, it seems clear that the $45 filing fee must be paid and that the fund resulting from administration may not·be charged with reimbursemet of such filing fee except in the two instances mentioned; the voluntary bankrupt who pays the fee **himself** may not be reimbursed.

The question remains: Does the fact that the bankrupt fails to pay the filing fee before the petition is filed but files a poverty affidavit, alter the situation?

There is a further question perhaps: Does the fact that the fund realized by the trustee resulted from the avoidance of a garnishment of bankrupt's wages, alter the result?

1. In the sections of the Act above cited there is an exception to the requirement of immediate payment of the $45 filing fee. This, of course, refers to what is generally called the filing of a pauper or poverty or inability affidavit·with the petition, which is described in General Order 35.[3]

General Order provides and spells out the requirements when a bank-

---

1. Section 52a fixes the clerk's fee at $8 in each estate but the "clerk may collect this amount in installments when * * * authorized by General Order."

2. Section 48c provides for a fee for the trustee, $5 for each estate deposited with the clerk at the time the petition is filed except when a fee is not required from a voluntary bankrupt. (That is, when a "pauper affidavit" is filed as described in G. O. 35.)

3. See references above in 40c (1): "installments if authorized by General Order." Similar language in Sections 51 and 52.

rupt can not pay "the filing fees ($45) in full at the time of filing the petition."[4]

With his bankruptcy (or Chapter XIII) petition, the bankrupt must file a verified petition stating that he is without and can not obtain the money to pay the filing fee in full at the time of filing; also state the facts showing the necessity for payment in installments and shall set forth the terms upon which the petitioner proposes to pay the filing fee.[5]

When this is done and the clerk accepts the bankruptcy petition without immediate payment of the filing fee but in lieu thereof the so-called "pauper affidavit" and the proposal of payment in installments, the court is called upon to consider the pauper affidavit at the first meeting of creditors.[6] At this meeting, the court shall enter an order fixing the amount and date of payment of such installments after hearing and examination of the bankrupt.

Moreover, the court's order may not provide that the final install-ment be payable more than six months after the date of filing the bankruptcy petition; provided that for cause shown the court may extend the time of payment of any installment for a period not to exceed three months. In any event, if the court did extend the date of payment of any installments, no proceeding looking to the discharge of the bankrupt may be instituted until the filing fees have been paid in full.[7]

From this it seems clear that the order of the court at the first meet-ing is the final determination of the obligation of the bankrupt respect-ing the method and time of payment in installments.[8]

But there are further penalties that follow failure of bankrupt to pay the filing fee. G. O. 35b provides that upon failure of bankrupt or debtor to pay any installment as ordered the court may dismiss the proceeding. The division of the installments—less than the total of $45—is provided for in this paragraph.[9]

From a consideration of all of these provisions of the General Orders and authorities, it seems evident that the bankrupt must in any

---

4. G. O. 35 (4)

5. In the affidavit accompanying his voluntary petition, bankrupt here alleges that his employer is holding $124 on a garnishment; that he has filed a motion in the Municipal Court for an order to turn this money over to the trustee and that he (bankrupt) will pay the filing fee out of said $124.

6. G. O. 35 (4) a

7. G. O. 35 (4) c

8. 2 Collier (14) p. 1875—"to prevent abuses, ample power is now given by G. O. 35 (4) to the judge (court) to investigate the truth of the pauper affidavit * * *. The affidavit will usually be held false if it appears that the debtor has exempt property or has paid an attorney for services in preparing the petition and schedules, or even, it has been held, if the bankrupt is at the time earning fair wages."

See also In re Stevenson (D. C. La. '42) 45 F. Supp. 709.

9. G. O. 35 (4) (b): the same proportion as if fully paid.

event pay the filing fee of $45; whether there may be reimbursement depends upon their falling within the group of persons described in Section 64a (1).

Further support to my conclusions is lent by a consideration of the prior law; e. g., prior to 1947, G. O. 35 (4) provided that if filing fees are not required to be paid by a debtor before filing his petition, the judge at any time might order those fees paid out of the estate or upon proof that bankrupt could then pay them, order him to pay them. This paragraph of G. O. 35 was eliminated after the Referee's Salary Act was passed in 1946.

Also prior to 1946, some courts favored proceedings in forma pauperis, although the majority insisted upon a requirement of the initial deposit. The 1946 Amendment of the Chandler Act and the new General Order have eliminated any opportunity to avoid payment of the initial filing fee. It is evident that this was done to insure sufficient funds to maintain the Bankruptcy Act under the salary system for referees.[10]

2. There remains the contention that the $45 filing fee should be paid—so far as possible—out of money collected by the trustee from bankrupt's employer by reason of the trustee's successful avoidance of the attachment of bankrupt's wages; the trustee in this connection collected $122.19.

I know that there is an opinion in some quarters that the avoidance of such a lien is automatic; that when a trustee avoids an attachment of bankrupt's wages obtained within four months of bankruptcy, the bankrupt somehow has some right or interest in the amount collected, and therefore it should be applied on filing fees.

In my judgment the bankrupt has no interest whatever in any sum thus realized; moreover he has no interest nor right to have such

---

10. Remington on Bankruptcy (5) Section 181: "The provision for avoiding the required deposit by filing a poverty affidavit was eliminated by 1946 Amendment of the Act. No authorization for escaping the deposit and proceeding in forma pauperis now appears. However, the Amendment left open for the Supreme Court to provide by General Order, for payment of the initial fees and deposits in installments."

Collier p. 1543 (1953 Supplement—Supplement page 201) referring to the $32, part of the filing fee for the referee's fund, says: "The Act requires the sums for the referees' salary and expense fund to be deposited when the petition is filed." "What happens afterwards is of no concern, and the statutory requirement is not predicated upon a condition subsequent that a referee render services. This is the only tenable basis upon which a self-supporting salary system could be erected * * *." "A further change effected by the amended provisions of the Referees' Salary Bill is the abolition of the so-called pauper petitions formerly provided for in Sec. 51 (2) and G. O. 35 (4), in lieu of which installment payments may be permitted under the proviso of Amended Sec. 40c (1)."

Collier p. 1872, par. 51.01 says: "The principal change effected in Sec. 51 * * * deals with the abolition of the so-called pauper petitions * * *. It seems more desirable to provide for installment payments in meritorious cases * * *." The author also refers to 28 U. S. C. Sec. 1915 and sees no conflict with Section 51.

attachment avoided although, of course, he may claim his state law exemptions at all times, whether the attachment is avoided or not.

In this case, bankrupt, as part of his "pauper affidavit" alleges that his wages in the sum of $124 have been garnisheed and that he will pay the filing fee out of this sum when it is released.

This court on March 17, 1953, the day of the first meeting, as required by G. O. 35 (4), entered an order (with consent of bankrupt) to pay the full filing fee of $45 on or before April 18, 1953. He has failed to pay any part thereof.

The attachment was set aside upon application of the trustee since it was a lien obtained while bankrupt was insolvent and within four months of bankruptcy. Section 67a so provides.

This section, however, was included in the Act for the benefit of creditors. Except insofar as bankrupt's exemptions may be involved, the bankrupt has no interest in it nor rights under it. Only the trustee has the right to have such judicial lien avoided to the prejudice of the attaching creditor.

If the trustee proceeds to act, the attaching creditor must be made a party. There is nothing automatic about it. The attaching creditor may oppose the avoidance of it. The trustee may decide not to avoid it if there is no appreciable benefit to the estate. So far as the bankrupt is concerned, he can obtain no more than his exemptions; and, except in very unusual cases,[11] his exemptions may be claimed without any aid from Section 67a.

As between the bankrupt and levying creditor, the lien is good. It is the privilege of the trustee to take steps to avoid it if he finds it advantageous to creditors—not to bankrupt. There is no absolute duty upon the trustee to avoid judicial liens under Section 67a; least of all is he required to do it for the benefit of the bankrupt. The money collected thereunder is the property of the estate to be distributed as provided in Section 64a.

These conclusions seem to be fully in accord with the text writers and the U. S. Supreme Court. Its latest pronouncement in which C. B. & Q. v. Hall, supra, is distinguished, is Fischer v. Pauline Oil Co. ('40) 309 U. S. 294.[12]

---

11. C. B. & Q. v. Hall ('13) 229 U. S. 511.

12. Connel v. Walker ('34) 291 U. S. 1; Howe's Lake v. Strickland (D. C. La. '51) 55 So. (2d) 51; Grambilas v. Linfair ('41) 126 N. J. L. 82; 4 Collier (14) p. 122; Remington (5) Sections 1619, 1621.

In Fischer v. Pauline, supra; Par. 1 of Syllabus: "Section 67f (now a) is intended for the benefit of bankrupt's Creditors and therefore does not avoid liens * * * as against all the world but only as against the trustees and those claiming under him. It is settled, however, that the bankrupt may assert the invalidity of a lien under this section, but only as respects property set apart to him as exempt in a bankruptcy proceeding."

Par. 2: "The operation of Section 67f (now a) is not automatic * * * without any action by the trustee. The lien is void only under specified conditions * * * and these conditions create issues of fact which, as between the trustee or one claiming under him and the lienor or one claiming by virtue of the lien, the parties are entitled to have determined judicially * * *."

For the reasons stated, I find that the request of the bankrupt joined by the trustee, that the court order $45 to be paid out of the estate, must be denied. The bankrupt must pay the filing fee of $45. Whether it will be reimbursed out of the estate is governed by Section 64a (1).

An order will be entered, requiring bankrupt to pay the sum of $45 filing fee on or before February 1, 1954.

---

Memorandum in amplification of the opinion in In re Droese, Case No. 70649, decided January 25, 1954.

Because of some doubts raised by the opinion in In re Droese, respecting the payment of the $45 filing fee required of the bankrupt, it appears appropriate to append this memorandum upon a collateral situation.

In the Droese case we considered only the obligation of the bankrupt to pay the filing fee upon pain of dismissal of his bankruptcy petition. It was held that the bankrupt could not escape such requirement because there were assets in the estate. In other words, the bankrupt could not upon his application have an order that the trustee, out of money belonging primarily to creditors, pay the filing fee and thereby relieve the bankrupt of the plain requirements of the Act and the relevant General Order—G. O. 35. If the bankrupt did pay such filing fee, and assets came into the estate, he could not claim reimbursement out of the fund.[1]

That opinion, in effect, held that if the bankrupt or some third person for him did not pay the $45 filing fee, the bankrupt's bankruptcy petition would be dismissed. It did not reach the question of payment of such fee out of the estate upon the distribution of the estate by the trustee, even though the bankrupt's petition was dismissed and in consequence he could not obtain a discharge in this case.

Since in that situation the trustee has funds in his hands, he will be ordered to distribute them under the orders of the court. In my judgment, he should be ordered first, to pay such $45 filing fee to the clerk; the balance, if any, to be distributed as provided in Section 64a. The absurdity of any other procedure is apparent. If the filing fees were not paid, the bankruptcy court through its machinery would be administering an estate in which the initial expense, the costs for initiating the proceeding (the filing fee), would not be paid.

It seems evident that the Supreme Court, when upon passage of the Referees' Salary Act (effective July 1, 1947) it amended General Order 35, did not intend so absurd a result. It made elaborate provisions for installment payment by bankrupt of the filing fee, insuring such payment prior to any consideration of a discharge—all of it under supervision of the court, not merely the judge. But it also eliminated former paragraph 4 of G. O. 35 which had provided in substance that when filing fees were not paid by the debtor before filing of his bank-

---

1. As stated in the Droese opinion, although a person other than the bankrupt could be reimbursed out of the fund if such person paid the filing fee, the bankrupt had no such right. Section 64a (1).

ruptcy petition, the **judge**, at any time during the proceedings, might order them paid out of the estate.[2]  In making this change, the Supreme Court may well have realized that the bankruptcy court had ample power to make an order to pay filing fees in asset cases, when the bankrupt fails to do so and his petition is dismissed.[3]

When there is no other specific course prescribed in the Act and General Orders, the bankruptcy court is a court following the principles and rules and practices of equity.  Equity will, when justice requires, order what ought to be done.  Many cases have made that declaration and it has been applied in bankruptcy in varied circumstances.[4]

There being no other course presented in the Act or General Orders, the bankruptcy court may surely proceed as indicated: order the filing fee paid out of the estate, after the bankrupt has failed to pay it, and his petition has been dismissed; the procedure would be somewhat similar to that followed in other cases where the bankruptcy petition is dismissed.

One of the rules of equity frequently applied, arises when one (or more) person(s) performs services for the benefit of a group of persons having a common interest in a trust fund.  In such instance such person (or persons) may be reimbursed from the trust fund.  Trustees v. Greenough, 105 U. S. 527.

In pursuance of this equitable rule, assignees for the benefit of creditors and receivers in non-bankruptcy courts, who turn over the debtor's assets to the bankruptcy court, may be compensated out of the bankrupt estate for beneficial services.  The value of such services being held to be in the nature of a lien or an equitable lien upon the property surrendered, is paid out of the fund realized, prior to the costs of administration and other categories in Section 64a; Remington (5) 2099, n. 10; 3 Collier (14 Ed) p. 1600, n. 36.

In the situation herein presented, the officers of the bankruptcy court, without prior payment of the filing fee required to initiate the proceeding, have performed services which ordinarily would not have been performed without prior payment of such fee.  In all justice, such

---

2. Former G. O. 35 par. 4: "In any case in which the fees of the clerk, referee, and trustee are not required by the act to be paid by a debtor before filing his petition to be adjudged a bankrupt, the judge, at any time during the pendency of the proceeding in bankruptcy may order those fees to be paid out of the estate; or may, after notice to the bankrupt, and satisfactory proof that he then has or can obtain the money with which to pay those fees, order him to pay them within a time specified, and, if he fails to do so, may order his petition to be dismissed.  He may also, pending such proceedings, both in voluntary and involuntary cases, order the commissions of referees and trustees to be paid immediately after such commissions accrue and are earned."

3. Collier seems to be in error in assuming that the former paragraph 4 of G. O. 35 is still in effect.  2 Collier (14 Ed.) pp. 1875 and 1876, n. 8.

4. Collier on Bankruptcy (14 Ed.), pp. 162-167; Remington on Bankruptcy (5) Section 23; Steelman v. All Cabinet Corp. (1937) 301 U. S. 278, 287 and 290.

filing fee should be held to have a preferred status senior to those in Section 64a (1).

There are a number of sections of the Act which disclose that the Bankruptcy Act has adopted, at least forfeited, the equitable rules above referred to.[5] In the first paragraph of Section 2a it is stated that courts of bankruptcy are invested "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act * * *."

Also Section 2a(15) which provides that the court may "make such orders and enter such judgments in addition to those specifically provided for, as may be necessary for the enforcement of the provision of this Act." It has been said that this is an omnibus provision, phrased in such general terms as to be the basis for a broad exercise of power in the administration of the estate. 1 Collier (14 Ed.), p. 276.

The Supreme Court, after quoting Section 2a (15) has said, in connection with another situation, "that the malleable processes of courts of bankruptcy give assurance of a remedy that can be moulded and adapted to the needs of the occasion." Steelman v. All Cabinet Corp. (1937) 301 U. S. 278, 289, 290.

Again, we have Section 20 (18) which provides that the court may tax costs and render judgments against "estates." While no case has been found where filing fees were taxed as costs to be paid out of the estate pursuant to this section, there are varied instances in which it has been relied upon. See Collier (14 Ed.) p. 314, n. 8.

From what has been said, it seems abundantly clear that the court may order the filing fee paid out of the estate—in addition to the reimbursement provision of Section 64a (1)—when bankrupt has failed to pay them, but only when the obligation of the bankrupt is to pay them. The reasons for enforcing that requirement are discussed in the opinion in the Droese case.[6]

---

5. It might be argued that Section 64a (1) warrants the conclusion that the filing fees might be ordered paid under the provision that "the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition," are to be accorded a first priority. This clause appears to apply to persons other than officers of the court who perform some service, since, after bankruptcy it would seem that other sections of the Act referred to above, are more in point.

6. There appears to be no conflict with 28 U. S. C., Section 1915 (permitting suit without pre-payment of costs); see 1 Collier (14) p. 1874, Section 51.01, Supplement.