A. J. BUMB, Appellant,

v.

BONAFIDE MILLS, INC., Appellee.

No. 18680.

United States Court of Appeals
Ninth Circuit.

Feb. 3, 1964.

an order of the referee in bankruptcy permanently enjoining and restraining the appellee "from proceeding against A. J. Bumb, (appellant) with its action in the Superior Court of the State of California, in and for the County of Los Angeles, entitled 'Bonafide Mills, Inc., a corporation, v. A. J. Bumb,' No. 773788, or from instituting any other action in any other state court in reference to the same cause of action, and that Bonafide Mills, Inc., pursue its remedy for the recovery of the loss of any goods or their reasonable value, in the bankruptcy court in the above entitled proceedings" and ordering the dissolution of the injunction.

The basic question presented on this appeal is whether jurisdiction rested in the bankruptcy court to enter the order which the District Court reversed.

It appears that some thirteen months after the bankruptcy estate had been closed, and after the entry of a final decree by the bankruptcy court, appellee filed the action in the state court against appellant, who had been the duly appointed receiver of the bankrupt estate, and one M. W. Engleman, as assignee for the benefit of creditors under an assignment made by the bankrupt prior to the filing of an involuntary petition in bankruptcy against him. While the complaint filed in the state court contains four counts, the gist of the action seeks to recover the sum of $16,578.98 by reason of the alleged negligence on the part of either M. W. Engleman, the assignee, or appellant for the loss of merchandise of that value belonging to appellee.

Shortly after the filing of the action in the Superior Court, the proceedings in the bankruptcy estate were reopened and on application of appellant, as receiver of the bankrupt estate, the bankruptcy court issued a temporary restraining order to restrain appellee from proceeding in any manner with the state court action, and an order to show cause why a permanent injunction should not be granted.

Following the hearing on the order to show cause, the order granting the permanent injunction was issued. The ap-

William J. Tiernan, Los Angeles, Cal., for appellant.

Brown & Brown, and Maynard Brown, Los Angeles, Cal., for appellee.

Before JERTBERG, MERRILL and BROWNING, Circuit Judges.

JERTBERG, Circuit Judge.

Before us is an appeal from an amended order of the District Court reversing

pellee on this appeal contends that the bankruptcy court was without jurisdiction to grant the injunction on the grounds that:

1. No act on its part, in the course of proceedings in the administration of the bankrupt estate, conferred jurisdiction on the bankruptcy court to enjoin a state court action by a creditor of the bankrupt estate to recover damages resulting from negligence on the part of the receiver of the bankrupt estate;

2. That such state court action does not impair or interfere with the bankruptcy proceedings; and

3. That the property of appellee, lost because of the negligence of the receiver, was never in custodia legis.

The appellant contends that the bankruptcy court had jurisdiction to issue the injunction by the acts of appellee in:

1. Filing proof of claim;

2. Filing the petition in reclamation; and

3. Participating in dividends paid to unsecured creditors of the bankrupt estate.

In order to place in focus the conflicting contentions of the parties, it is necessary to review the background leading up to the controversy. Prior to the initiation of the bankruptcy proceedings, appellee delivered certain flooring merchandise to the bankrupt under a consignment agreement dated March 6, 1959. On July 7, 1959 the bankrupt made an assignment for the benefit of creditors to M. W. Engleman [a co-defendant in the state court action] who, it is claimed, took possession of the merchandise of appellee delivered to bankrupt under the consignment agreement. On July 13, 1959 an involuntary petition in bankruptcy was filed against the bankrupt and appellant was appointed receiver and became custodian of the assets of the bankrupt on July 14, 1959. On September 17, 1959 the bankrupt filed a petition to offer a compromise or plan of arrangements to his creditors pursuant to Section 321 of the Bankruptcy Act. On September 15, 1959 appellee filed a claim in the bankruptcy proceedings for the recovery of $8,226.58 based upon goods shipped to the bankrupt on consignment and subsequently sold by said bankrupt and not paid for.

On October 1, 1959 appellee filed a petition in reclamation requesting the return to appellee of all unsold merchandise. The receiver turned over to appellee merchandise in the value of $97,-266.61. After the receipt of such merchandise, appellee determined that there was a shortage of materials in the amount of $16,578.98. By stipulation filed October 31, 1960 signed by the attorney for appellee and attorneys for the bankrupt, but not by receiver or his attorney, and on order of the bankruptcy court approving the stipulation, the general claim of appellee was increased from $8,226.28 to $27,590.39, and allowed. Of this increase $16,578.98 was stated to be the value of the merchandise which had not been returned to appellee. The stipulation also provided that appellee withdraw its petition for reclamation, and furthermore that the stipulation should not prejudice appellee's right to pursue any remedy against any other party for the loss of the merchandise.

An order confirming the bankrupt's plan of arrangement was made on November 3, 1959 providing for payment to unsecured creditors to the extent of 27.5% of their claims, in satisfaction of their claims. The dividend was paid on March 27, 1961 including the dividend to the appellee upon its increased claim of $27,590.39. Of the amount of such dividend received by appellee, it was agreed in the stipulation that 60% of such payment shall be applied to the reduction of appellee's claim for the loss of consigned merchandise, and 40% shall be applied in the reduction of the balance of its claim.

Upon payment of the dividends and upon approval of the report and account of the receiver, the bankruptcy estate was closed. A trustee of the bankruptcy estate was never appointed.

■ As above noted, the proceedings in the bankruptcy estate were reopened

shortly after the filing of the state court action. No attack is made by appellee on the power of the referee to make such order, or on the propriety of the same. A bankruptcy court has jurisdiction to reopen estates for "cause shown". 11 U.S.C. § 11, sub. a(8), as amended. See In re Thomas, 204 F.2d 788 (7th Cir. 1953.) The effect of a reopening order is to put the bankrupt estate back into the process of administration. In re Rochester Sanitarium & Baths Co., 222 F. 22 (2nd Cir. 1915).

Upon application of appellant, the referee issued an order directed to the appellee to show cause why a permanent injunction should not be granted. Following the hearing on the order to show cause, in which counsel for both parties participated, the application for permanent injunction was granted.

It is to be noted that the order of the referee in bankruptcy does not prevent appellee from pursuing the cause of action or claim against appellant. The order prescribes that appellee pursue its remedy against appellant for the recovery of the loss of any goods, or their reasonable value, in the bankruptcy court in the reopened proceedings.

■ We believe that the bankruptcy court acted within its jurisdiction in issuing the injunction and that the District Court erred in reversing the same. Under the stipulated order arising out of the filing by appellee of the petition for reclamation, appellee was permitted to increase its claim in the amount of $16,578.98, the value of the goods which were unaccountably missing. Appellee does not question that it invoked the jurisdiction of the bankruptcy court in so doing, nor does it question that the District Court acted within its jurisdiction in allowing the claim in such increased amount. The fact that the petition for reclamation was dismissed after its purpose had been served does not divest the bankruptcy court of the jurisdiction which had been invoked in respect to the missing property. The appellee did not object to the final report and account of the receiver that there were no further assets in the estate to be administered, or in any manner call to the referee's attention that the receiver had in his possession the missing merchandise. Neither did appellee assert its claim in a plenary action before the bankruptcy was closed. Furthermore, appellee received its 27.5% dividend on the claim increased by the value of the missing merchandise. Apparently appellee preferred to receive this dividend, thereby decreasing the amount of dividends paid to other creditors of the same class, permit the bankruptcy to be closed and then seek to recover for its own account the value of the missing merchandise from the appellant and/or M. W. Engleman.

■ The referee in bankruptcy found as a fact that the receiver acted as custodian of the assets of the bankrupt estate until shortly after the order confirming the plan of arrangements was made and entered, on or about November 3, 1959. The district judge held such finding to be clearly erroneous and based his order of reversal largely on his determination that the missing merchandise was missing before the receiver was appointed and never came into custody of the receiver, and therefore was never in custodia legis. The District Court was of the view that the order of the referee, based on the stipulation, allowing the claim of appellee in an amount increased by the value of the missing merchandise conclusively establishes that the merchandise was missing at the time of the filing of the involuntary petition in bankruptcy and never came into the custody of the receiver.

■ We respectfully disagree with the District Court. In the circumstances of this case the allowance by the referee of the claim of appellee in an amount increased by the value of the missing merchandise does not, in and of itself, establish that the missing merchandise never came into the custody of the receiver. We note that appellee disagrees with the conclusion of the District Judge in this respect. In our view the finding of fact of the bankruptcy court is supported by substantial evidence and cannot be said

**548**

to be wholly erroneous. Under the provisions of General Order 47, 11 U.S.C. following section 53, a judge shall accept the findings of the referee unless clearly erroneous.

■ The contentions of the appellee are that the bankruptcy court was without jurisdiction to issue the injunction because the receiver never claimed title to the missing property on behalf of the bankrupt estate; the receiver has never disputed appellee's claim of right to possession of the missing property; the state court action is one *in personam* against appellant in his individual capacity; the action is one to recover damages against the receiver either for his negligence in permitting the missing property to disappear, or for conversion of the missing property; and that such suit in no way interferes with or impedes the administration of the bankrupt estate. If the case is to be considered in the posture claimed by appellee, we recognize:

"A receiver is liable personally for acts beyond his authority 'even when the wrongful acts were in his capacity as an officer of the court without personal interest on his part'; in such matters he may be sued without the consent of the bankruptcy court in a non-bankruptcy court. The bankruptcy court will not undertake to enjoin such actions, except in the rare situation where the equities of the case may demand it. Thus the receiver may be sued for conversion, trespass, or for money had and received because of the wrongful refusal to return a deposit." 1 Collier, Bankruptcy, § 2.30 (14th Ed.1962).

See In re National Molding Company, 230 F.2d 69 (3rd Cir. 1956); see also In re French, 18 F.2d 792, at page 793 (D. Mich.1927), where the court stated:

"* * * [I]t has been held repeatedly that federal courts may enjoin proceedings pending in state courts relating to *possessory* rights in property being administered in the bankruptcy courts. * * * On the other hand, it has been held consistently

that the representative capacity of the trustee' in bankruptcy does not exempt him from personal liability in actions for damages growing out of the alleged conversion of property, and that such actions pending in the state court may not be enjoined." (Original italics.)

If the appellee had not caused to be approved by the referee its amended claim which included the value of the missing merchandise, and had not participated in the distribution of dividends to creditors on the basis that the estate was indebted to appellee in the amount of the value of the missing property, we would have no difficulty in affirming the order of the District Court.

However, it is recognized,

"[I]f the suit in question strongly tends to affect the administration of the estate, even though it be an *in personam* suit against the bankrupt, or the receiver or trustee, the court may restrain the action." 1 Collier, Bankruptcy, § 2.61, p. 305 (14th Ed. 1962).

Under § 2, sub. a(15), 11 U.S.C. § 11, sub. a(15), a referee in bankruptcy may,

"Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title: *Provided, however,* That an injunction to restrain a court may be issued by the judge only;"

In the case of In re Lustron Corp., 184 F.2d 789, at page 794, (7th Cir. 1950), C. D. 340 U.S. 946, 71 S.Ct. 531, 95 L.Ed. 682, it is stated:

"Section 2, sub. a(15) is so phrased as to provide for broad exercise of power. Jurisdiction to administer the estate, once it has attached, draws to the court power to protect the estate not only against waste or fraud but also against all proceedings impinging upon its function of discovery of assets and equitable administration of the estate. Suits may be enjoined if they hamper

bankruptcy, as when there is a basis for fear that they will be used as instruments or devices to render fraud triumphant or to defeat equal treatment of creditors,—the goal of bankruptcy."

Also see Steelman v. All Continent Corp., 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937).

11 U.S.C. § 105, sub. a declares that dividends of an equal percentum shall be declared and paid on all allowed claims, except such as have priority or are secured. Undoubtedly the purpose of this section is to achieve "equal treatment of creditors,—the goal of bankruptcy."

If appellee should be successful in the state action, the fruits of any recovery will be retained by appellee, and no part of it will be distributed to other creditors of the same class, notwithstanding the fact that appellee has received a distribution of dividends based on the value of the missing property, the effect of which was to reduce the amount of dividends distributed to other creditors. In equity and good conscience should appellee recover fruits from the action against the receiver or Engleman, an amount at least equal to that received in dividends on account of the value of the missing property should be distributed in a manner which will insure equal treatment of all creditors in the same class. Only in this way could other creditors be placed in the position that they would have been in if the missing merchandise had never been lost, and the amended allowed claim of appellee had not included the value of the same. Thus would be achieved "equal treatment of creditors,—the goal of bankruptcy."

In our view for the above reasons the bankruptcy court is the proper forum for the prosecution of appellee's suit against the receiver. The bankruptcy court acted within its jurisdiction in issuing the restraining order.

The order of the District Court dissolving the injunction is reversed and the cause remanded to the referee in bankruptcy with the suggestion that consider-ation be given to broadening the injunction in the form set forth in the original order of injunction dated and filed September 12, 1962, which order appears in the transcript of record on appeal.