**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**In re PROPOSED SETTLEMENT OF PITTSBURGH AND LAKE ERIE LITIGATION.**

**No. 70–347.**

United States District Court, E. D. Pennsylvania.

April 1, 1978.

Edwin K. Taylor, Philadelphia, Pa., for Penn Central Transp. Co.

Stephen A. Weiner, New York City, for Irving Trust Co., as Indenture Trustee.

Victor Wright, Henry C. Fader, Philadelphia, Pa., for plaintiffs in MDL No. 134.

Nancy J. Gellman, Philadelphia, Pa., for W. C. and W. P. Snyder.

Frederick N. Egler, Pittsburgh, Pa., for Pittsburgh & Lake Erie R. Co.

Gilbert J. Helwig, Pittsburgh, Pa., for H. G. Allyn et al., Individual Director and Officers of Pittsburgh & Lake Erie R. Co.

Spencer Ervin, Jr., Philadelphia, Pa., for New Haven Trustee.

MEMORANDUM AND ORDER NO. 3503

FULLAM, District Judge.

By Collateral Trust Indentures dated April 15, 1965 and April 15, 1968, Penn Central pledged, as collateral security for certain indebtedness, 22.5% of the common stock of the Pittsburgh & Lake Erie Railroad Company, to Irving Trust Company as Indenture Trustee for bondholders. In 1972, various lawsuits were filed by minority shareholders of the P&LE, in their own right and as derivative claims on behalf of the P&LE against various officers and directors of the P&LE, of the Penn Central Transportation Company, and against the P&LE itself, and certain accounting firms and financial institutions, charging a variety of improprieties in the financial relationships between the P&LE and the Penn Central, the owner of most of the P&LE stock. These actions were consolidated, before another judge of this District, under the caption *In re Pittsburgh & Lake Erie Railroad Company Securities and Antitrust Litigation,* M.D.L. Docket No. 134, 374 F.Supp. 1404.

In 1975, a comprehensive settlement of that litigation was approved by the presiding judge. Upon petition of the Penn Central Trustees, I authorized them to enter into the proposed settlement, finding that it was in the best interests of the Debtor's estate and of its reorganization. I expressed no view as to the merits of the settlement with respect to the other parties involved.

Under the settlement agreement, the P&LE itself was to contribute $2.1 million toward an escrow fund of $2.25 million which was to be used to pay the damages allegedly sustained by the minority shareholders. Irving Trust Company in its capacity as Indenture Trustee under the Collateral Trust Indentures mentioned above,

as pledgee of 22.5% of the outstanding P&LE common stock, objected to the settlement and appealed to the Third Circuit Court of Appeals, on the ground that the proposed payment by P&LE would have the effect of diluting the value of the pledged common shares. The Court of Appeals agreed, finding that "the pledgee's equity is being diluted to the extent of approximately $472,500." *In re Pittsburgh & Lake Erie Railroad Company Securities Antitrust Litigation, Appeal of Objector Irving Trust Company as Trustee,* 543 F.2d 1058, 1069 (3d Cir. 1976).

In 1977, the parties to the litigation amended their settlement arrangements in order to overcome the objections expressed by the Court of Appeals. After hearing, the presiding judge approved the new settlement agreement, and the Trustees have now petitioned this Court for leave to join in and carry out the terms of the modified settlement arrangement.

The principal change in the settlement agreement is that it now provides for a special escrow fund in the amount of $918,-522 plus accumulated interest to guard against the possibility that the interests represented by Irving Trust will suffer detriment by reason of the dilution of the value of the pledged P&LE stock resulting from the cash payments being made by P&LE in order to carry out the settlement. At least, that is what all of the parties except Irving Trust now agree is the correct interpretation of the settlement documents. Irving Trust, on the other hand, seems to be arguing that the escrowed funds are to provide an additional resource for the payment of the indebtedness underlying the pledge of the stock, which may be awarded to Irving Trust by the M.D.L. 134 Court, over and above what the Penn Central Reorganization Plan produces for those bondholders.

The "Revised Stipulation of Settlement and Compromise" dated April 13, 1977 (Exhibit T–3 in these proceedings) contains the following provisions:

"(iii) If the Reorganization Court before which a Plan of Reorganization for

the Penn Central Transportation Company, Debtor, is pending shall finally determine that Irving and the bondholders have a valid and enforceable lien against the shares held by Irving as collateral (or against the proceeds of the sale thereof), and the value of the said shares (or the proceeds of the sale thereof) shall not be sufficient to compensate the bondholders for the amount determined to be due them, then in such event Irving (or its successor as Indenture Trustee) may apply to this Court [i. e., the M.D.L. Court] for an order directing payment to it on behalf of the bondholders, or to the bondholders directly, such amount or amounts . . . if any, as may be necessary to avert loss to the bondholders by reason of deficiency in the value of the said shares or the amount received by them.

"(iv) If the Reorganization Court before which a Plan of Reorganization for the Penn Central Transportation Company, Debtor, is pending, shall finally determine that Irving and the bondholders do not have a valid and enforceable lien against the shares held by Irving as collateral (or against the proceeds of the sale thereof), then neither Irving nor the bondholders shall be entitled to receive any part of the [escrowed funds]."

The agreement then provides for distribution of amounts not ordered payable to Irving or the bondholders.

All of the parties except Irving Trust interpret this language as meaning simply that, if it should ever become legally permissible for Irving Trust to foreclose the pledge the escrow fund would stand as additional collateral for the indebtedness, and would be available to Irving Trust and the bondholders in the event they were unable to collect the debt by selling the stock. If the claims represented by Irving Trust are discharged, by reason of the consummation of the pending Plan of Reorganization for Penn Central, neither Irving Trust nor the bondholders would have any claim against the escrow fund. Irving Trust, on the other hand, argues that if the reorganization proceeding does not produce for the bondholders what they regard as payment in full for

their claims, the M.D.L. Court can then use the escrow funds to pay them in cash whatever deficiencies they there establish.

While the position now asserted by Irving Trust is, in my judgment, untenable, it must be conceded that the language employed by the draftsmen of the settlement agreement is lacking in precision. The following points should be noted:

1. The Reorganization Court does not "finally determine" anything, since all of its Orders are subject to appellate review. Presumably, this wording was intended to refer to the final outcome of the Plan proceedings with respect to Irving's claim.

2. No one has ever challenged the fact that Irving Trust Company and the bondholders do have a valid lien against the pledged shares. Upon consummation of the Plan of Reorganization, that lien will be discharged, and they will no longer have a valid lien against the shares. In the interim, it would seem that they have an "enforceable" lien, but their right to enforce it has been suspended (for the most part, but perhaps not entirely) until further Order of this Court.

3. It is unclear which court is supposed to determine whether the "value of the said shares (or the proceeds of the sale thereof)" will be "sufficient to compensate the bondholders for the amount determined to be due them," or, indeed, which court is to determine the amount due the bondholders.

4. The provision for payment, from the escrow fund, to Irving and the bondholders of such amount "as may be necessary to avert loss to the bondholders by reason of deficiency in the value of the said shares or the amount received by them" is not easily deciphered. Perhaps the phrase "or the amount received by them" was intended to parallel the earlier references to "or the proceeds of the sale thereof."

This Court has recently approved the Penn Central Reorganization Plan, which is now in the process of being voted upon by the various interested parties. Not only does the Plan treat Irving's collateral trust claims as fully secured, but those claims are

treated somewhat more favorably than the claims of other fully-secured creditors, in recognition of the fact that Irving's claims are "super secured" (*i. e.,* substantially more than 100% secured by retained assets, as distinguished from assets conveyed to ConRail which cannot be realized upon until conclusion of the Valuation Case litigation in the Special Court), and in recognition of the fact that the P&LE stock pledged as collateral for Irving's claims (a) represents a relatively liquid asset, and (b) would arguably be somewhat less vulnerable to the pre-eminent claims of the Federal Government, and to unpaid administration claims, than the assets securing the claims of other secured creditors. (*See Plan Approval Opinion* of March 17, 1978, slip op. at p. 62.)

Needless to say, if the Plan is consummated, all of the claims represented by Irving Trust will be satisfied through the mechanism of the Plan, and there will be no occasion for recourse to the pledged collateral or to the escrow funds. If the Plan is not consummated, Irving Trust would no doubt be in a position to seek leave of Court to foreclose, but the claims of the Federal Government, of state and local tax claimants, and of other higher-priority administrative claimants would also be heard from.

Irving Trust has seized upon certain language in the Court of Appeals Opinion cited above as suggesting that Irving is virtually in the same position as the real owner of the pledged shares, and thus should be free to negotiate its own settlement with respect to them. I believe this misconstrues the Court's holding. The Court was simply making the point that, as between the pledgor and the pledgee, the latter had the paramount interest in preserving the value of the collateral; and that this was emphatically true when the threatened impairment of the collateral stemmed from the settlement of litigation charging the pledgor with wrongdoing. No one has intimated, or could successfully maintain, that the Trustees were charged with improprieties, that Order No. 1 should be ignored, or that the pledged shares are no longer assets of the Debtor's estate within the fiduciary responsibility of the Trustees.

It should be noted, also, that because of the limitations in the record presented to the Court of Appeals, it was necessary for that Court to proceed on the assumption that the pledged shares of P&LE stock represented the only security for the underlying indebtedness to the bondholders. As the more complete record in the Plan proceedings now demonstrates, however, the indebtedness is amply secured, by other assets as well as the pledged stock. This is no way detracts from the legitimacy of Irving's objections to the threatened impairment of the value of the pledged stock, but it has an important bearing upon the Trustees' "equity" in the pledged collateral, and the need for its continued availability for disposition pursuant to the Plan of Reorganization.

I am satisfied that the proposed settlement of the M.D.L. litigation is in the best interests of the Penn Central estate, and that the Trustees should be permitted to carry out the terms of the proposed settlement, if the Trustees' interpretation of the settlement documents is correct, as I believe it to be. I am equally persuaded that it would not be permissible to authorize the Trustees to agree to provide Irving Trust Company or the bondholders it represents with special benefits in the form of potential cash payments beyond the distributions contemplated in the Plan of Reorganization. Irving Trust is plainly entitled to have the protection of the escrow arrangement, but cannot be permitted to obtain actual payment from that source except upon further Order of this Court.

An Order in conformity with the foregoing views will therefore be entered. As stated above, I believe this result is entirely consistent with the intention of the parties to the settlement agreement, and with the intention of the M.D.L. Court in approving the settlement. Should this interpretation be erroneous, I am confident that further clarification will be forthcoming.

## ORDER NO. 3503

AND NOW, this 11th day of April, 1978, upon consideration of the "Petition of Trus-

tees for Authority to Agree to Settlement of Litigation Involving The Pittsburgh and Lake Erie Railroad Company and to Enjoin Certain Penn Central Transportation Company Bondholders" (Doc. No. 14776) (Petition), and after hearing thereon duly noticed,

It appearing that the terms of the settlement of the litigation entitled *In re Pittsburgh and Lake Erie Railroad Company— Securities and Antitrust Litigation,* U.S. D.C. E.D.Pa. M.D.L. Docket No. 134, 374 F.Supp. 1404, and any related cases not included therein (*P&LE* cases), as set forth in the Petition, will be in the best interests of the Debtor's estate and its reorganization, it is hereby ORDERED that:

1. The Trustees are authorized to join in the settlement of the *P&LE* cases in accordance with the terms of the Stipulation of Settlement and Compromise dated May 6, 1975, as amended by Revised Stipulation of Settlement and Compromise dated April 13, 1977 (Settlement Agreements), entered into among the plaintiffs and defendants in the *P&LE* cases.

2. The Trustees, or any of them, or their designees, are authorized to execute and deliver such agreements or other documents as may be necessary or appropriate to effectuate the provisions of the Settlement Agreements applicable to the Trustees.

3. Irving Trust Company, and any successor to it, as Indenture Trustee under the Collateral Trust Indentures dated April 15, 1965 and April 15, 1968, is enjoined, until further Order of this Court, from obtaining or seeking to obtain payment from the escrow fund established pursuant to the Settlement Agreements or from otherwise attempting to realize upon the pledged collateral; the provisions of Order No. 1 in these proceedings shall apply and continue to apply to the escrow fund, as well as to the pledged stock.

4. The Trustees shall give notice of this Order by mailing a copy of it to Irving Trust Company, New York, New York, all holders of the Collateral Trust Bonds whose identities are known to the Trustees, all parties customarily notified of orders in this proceeding, and to counsel for plaintiffs and defendants in the *P&LE* cases.