In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor,

v.

IRVING TRUST COMPANY, as Indenture Trustee, Appellant.

No. 78–1797.

United States Court of Appeals, Third Circuit.

Argued Dec. 12, 1978.

Decided Feb. 20, 1979.

Stephen A. Weiner, Winthrop, Stimson, Putnam & Roberts, New York City, for appellant.

Edwin K. Taylor, Carl Helmetag, Jr., Philadelphia, Pa., for appellees.

Before ALDISERT, ADAMS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

The Irving Trust Company as Indenture Trustee under two Collateral Trust Indentures appeals from the entry of an injunction by the reorganization court presiding over the reorganization proceedings of the Penn Central Transportation Company (PCTC). The reorganization court has entered an order authorizing the trustees of the PCTC to join in a settlement agreement

arising out of certain litigation before the late Judge James H. Gorbey. In the same order, the reorganization court enjoined access by Irving Trust to an escrow fund established as a result of that settlement agreement. Irving Trust has not challenged the jurisdiction of the reorganization court to authorize the PCTC trustees to join in the settlement and we will not disturb the order in this regard. Because we conclude that the reorganization court was without jurisdiction to issue the injunction, however, we will reverse that segment of the order.

## I.

Irving Trust is trustee under the Collateral Trust Indenture dated April 15, 1955 between the New York Central Railroad (a predecessor of the PCTC) and Irving Trust Company, Trustee, securing not. more than $9,800,000 of Collateral Trust 6% Bonds due April 15, 1990. Irving Trust is also trustee under the Collateral Trust Indenture dated April 15, 1968 between the Penn Central Company (the immediate predecessor of the PCTC) and Irving Trust Company, Trustee, securing not more than $13,941,400 of Collateral Trust 6½% bonds due April 15, 1993. A total of $7,800,000 principal amount of bonds issued under the 1965 Indenture and $7,641,800 principal amount of bonds issued under the 1968 indenture were outstanding prior to the consummation of the PCTC plan of reorganization.

As part of the security for these bonds a total of 161,698 shares of the capital stock of the Pittsburgh and Lake Erie Railroad Company (P&LE) were pledged under the two indentures. · Those shares constitute 22.82% of the outstanding P&LE stock. The PCTC is the legal owner of 92.61% of the outstanding P&LE stock including the 22.82% pledged under the Collateral Trust Indentures. The remaining 7.39% of the shares are publicly held. The holders of these shares are hereinafter referred to as the 7% shareholders.

PCTC's filing of a petition for reorganization under Section 77 of the Bankruptcy Act, 11 U.S.C. § 205, constituted an Event of Default under the terms of the two indentures thus empowering Irving Trust to dispose of the P&LE shares pledged to it. Order No. 1 of the reorganization court, however, enjoined any such disposition or similar enforcement of any lien on the PCTC's property.

A number of derivative suits were brought by minority shareholders of the P&LE charging that certain officers and directors of the P&LE and of the PCTC and others had violated federal securities and antitrust laws and state laws of fiduciary duty as the result of certain loans from P&LE to the PCTC at allegedly inadequate interest rates and a conditional sales agreement between the two companies requiring P&LE to pay allegedly excessive interest.[1] Though these actions were originally brought in seven different districts they were all consolidated pursuant to 28 U.S.C. § 1407 in the Eastern District of Pennsylvania with Judge Gorbey presiding. *See In re*

1. This court has previously summarized the claims as follows:

   The derivative-suit plaintiffs charge the actual defendants with (1) violations of § 10 of the Clayton Act, 15 U.S.C. § 20, which prohibits certain transactions between carriers having interlocking directorates; (2) violations of the federal securities laws for omitting information pertaining to these negotiated transactions from the 1969 P&LE Annual Report and for failing to register certain loan transactions; and (3) violations of fiduciary obligations imposed by state law. The class action plaintiffs, on behalf of all owners of the 7% publicly-held stock, charge P&LE and the other defendants with the same violations of § 10 of the Clayton Act. Both the federal and state law claims allege that in a series of transactions antedating the filing of its petition for reorganization, Penn Central (the 93% shareholder) was permitted to raid the assets of P&LE to the latter's detriment. Specifically, the plaintiffs claim that defendants improvidently permitted P&LE to make a series of loans to Penn Central at inadequate interest rates and at a time when they knew or should have known of the latter's precarious financial condition, and to enter into a conditional sales agreement with Penn Central to finance rolling stock at an excessive rate of interest.

   *In re Pittsburgh & Lake Erie R.R.*, 543 F.2d 1058, 1061 (3d Cir. 1976).

*Pittsburgh & Lake Erie R.R. Co. Sec. & Antitr. Lit.*, 374 F.Supp. 1404 (Jud.Pan. Mult.Lit.1974) (per curiam). A settlement agreement was reached in this litigation whereby a fund of $2,250,000 was created. By the terms of this settlement, P&LE contributed $2,100,000 and other defendants contributed $150,000.[2] $750,000 of this fund would go to plaintiffs' attorneys and the remainder to the 7% shareholders. This settlement agreement was approved by Judge Gorbey. Irving Trust appealed to this court from the order approving the settlement. We held that the district court had abused its discretion in approving the settlement and ordered that the settlement order be vacated. *In re Pittsburgh & Lake Erie R.R.*, 543 F.2d 1058 (3d Cir. 1976). A prime focus of that decision was the potential unfairness visited upon Irving Trust's bondholders. This court was concerned that the value of the bondholders' collateral might be diluted as a result of the distribution solely to the 7% shareholders and their attorneys.

As a result of this court's decision, a new settlement agreement was reached whereby $472,000 would be set aside in an escrow fund. Amended Paragraph 3(c)(iii) of the settlement agreement sets forth the circumstances under which Irving Trust would receive compensation from that fund:

(iii) If the reorganization court before which a Plan of Reorganization for the Penn Central Transportation Company, Debtor, is pending shall finally determine that Irving and the bondholders have a valid and enforceable lien against the shares held by Irving as collateral (or against the proceeds of the sale thereof), and the value of the said shares (or the proceeds of the sale thereof) shall not be sufficient to compensate the bondholders for the amount determined to be due them, then in such event Irving (or its

successor as indenture trustee) may apply to this Court for an Order directing payment to it on behalf of the bondholders, or to the bondholders directly, such amount or amounts, up to but not exceeding the full sum of $472,500 plus accumulated interest thereon, if any, as may be necessary to avert loss to the bondholders by reason of deficiency in the value of the said shares or the amount received by them.

Any portion of the fund not paid to Irving Trust or its bondholders would go to the 7% shareholder and their attorneys. The $472,500 figure was eventually increased to $918,000 after further objection by Irving Trust.

In addition to the cash payments just described, the settlement agreement also involved the cancellation of certain claims as specified in Paragraph 5 of the Settlement Agreement:

5. Parties in these actions and the trustees of the Property of Penn Central Transportation Company, Debtor ("Trustees"), will exchange releases to be approved by the Court releasing one another and the present members of the Board of the Company from all claims and demands arising out of or based upon matters upon which Plaintiffs' claims are based or upon the settlement thereof, including any claims against the trustees for indemnity which have been or may be asserted by any party. Defendants represent that the trustees have indicated that they will not object to the distribution to Shareholders provided for by this settlement agreement, subject to the approval of the reorganization court, which said approval they will promptly seek. Defendant will cooperate fully and in good faith in seeking and attempting to obtain said approval. The Company has agreed to release the Trustees of any

---

**2.** "The apparent basis for apportioning the respective contributions to the settlement fund was that the plaintiffs claimed that Penn Central had benefited from P&LE to the extent of $30,000,000, and that the minority shareholders' pro rata loss was 7% of that sum, or $2,100,000. In order to prevent dilu-

tion of the 7% minority shareholders' equity implicated in P&LE's payment into the fund, the individual defendants were assessed $150,000 (roughly 7% of $2,100,000)."

*In re Pittsburgh & Lake Erie R.R., supra,* 543 F.2d at 1062 n. 7.

claim to be paid the balance due because of the loans of $12,800,000 made by the Company to the Penn Central Transportation Company, outstanding as of June 21, 1970, and accrued interest thereon, and the Company and the trustees have further agreed that the release of such indebtedness will not be a factor in computing or determining any credits allowable or sums due under the Tax Allocation Agreement between the two companies. App., pp. 33–34.

On August 23, 1977, Judge Gorbey approved the revised settlement. That approval, however, was made "subject to such approval of the Penn Central reorganization court (Hon. John P. Fullam—in the Matter of Penn Central Transportation Company, Debtor; in Proceedings for the Reorganization of a Railroad, No. 70–347) as may be necessary to authorize the Penn Central trustees to waive receipt of any part of the settlement Fund herein and to exchange releases as contemplated by the Settlement Agreement. . . ." App., p. 27.

The trustees of the PCTC then sought authorization from the reorganization court to join in the P&LE settlement. The PCTC trustees also asked the reorganization court to enjoin Irving Trust from seeking any distribution from the escrow fund, without leave of the reorganization court. The reorganization court granted the PCTC trustees the authority to join in the settlement and per the following paragraph of its order of April 11, 1978, also entered the injunction sought by the trustees:

3. Irving Trust Company, and any successor to it, as Indenture Trustee under the Collateral Trust Indentures dated April 15, 1965 and April 15, 1968, is enjoined, until further Order of this Court, from obtaining or seeking to obtain payment from the escrow fund established pursuant to the Settlement Agreements or from otherwise attempting to realize upon the pledged collateral; the provisions of Order No. 1 in these proceedings shall apply and continue to apply to the escrow fund, as well as to the pledged stock.

*In re Penn Central Transportation Co.,* 450 F.Supp. 86, 90 (E.D.Pa.1978).

## II.

Irving Trust appeals from this paragraph of the order. It asserts that the reorganization court lacked jurisdiction to enter the injunction. We note initially that Paragraph 3(c)(iii) of the settlement agreement approved by Judge Gorbey and quoted above requires a determination by the reorganization court as to the validity and enforceability of Irving Trust's lien on the P&LE shares. Also as mentioned above, Judge Gorbey's order approving the settlement agreement made that approval contingent upon the reorganization court's authorizing the trustees to waive receipt of the settlement fund and to exchange releases. Although Judge Gorbey obviously contemplated action by the reorganization court, he could not confer jurisdiction on the reorganization court to enter the injunction here if the reorganization court was otherwise without such jurisdiction. Thus, we must decide whether the reorganization court's jurisdiction was, indeed, broad enough to allow the issuance of the injunction.

Section 77(a) of the Bankruptcy Act, 11 U.S.C. § 205(a), provides that the reorganization court shall "have exclusive jurisdiction of the debtor and its property wherever located, and shall have and may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity of the property of the debtor for any purpose." The reorganization court has the authority under § 77(j), 11 U.S.C. § 205(j), to enjoin suits to enforce a lien upon the debtor's estate prior to the final decree. Section 2(a)15, 11 U.S.C. § 11(a)(15) confers power upon a bankruptcy court to "make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions

of this Act." Under the All Writs Act, 28 U.S.C. § 1651, the reorganization court, like all federal courts, has the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

This court has already noted that, pursuant to the above provisions, the reorganization court may "enjoin interference with property in which the debtor has an interest which would hinder, obstruct and delay preparation and consummation of a plan" and the reorganization court may "issue injunctions against proceedings in other courts which would defeat its jurisdiction to adjudicate completely, or would embarrass its administration of the estate." *In re Penn Central Transportation Co.*, 520 F.2d 1388, 1391–92 (3d Cir. 1975).[3]

■ The reorganization court cannot, however, exercise jurisdiction over property not of the debtor's estate and it cannot enjoin actions that do not affect the estate in any meaningful way.

In *In re Penn Central, supra*, the reorganization court had enjoined the Penn Central Company, the sole shareholder of the PCTC, from bringing a suit on its own behalf against the United States in the Court of Claims seeking damages under the Tucker Act, 28 U.S.C. § 1491. This court held that since the Penn Central Company's complaint stated a cause of action belonging to itself and not the debtor, the reorganization court was without power to enjoin the action regardless of the possibility that the suit might result in precedent harmful to the estate.[4]

. The reorganization court, in *In re Penn Central*, 409 F.Supp. 1081 (E.D.Pa.1976), refused to enjoin a suit brought by a Mr. Trainor on behalf of certain bondholders against the U.S. asking that the government pay off bonds or compensate the bondholders for any reduction in the value of the bonds caused by unconstitutional erosion. The court stated:

Actions such as those being pursued by Mr. Trainor are specifically prohibited in the Trust Indenture. It is apparent from the pleadings and briefs filed in this Court that neither Mr. Trainor nor his counsel have an accurate perception of the issues involved. It also seems clear that prosecution of the action in the Court of Claims to a successful conclusion (unlikely as that may now seem) would inevitably affect the proper treatment of the claims of the bondholders in the reorganization plan. But, as I understand the opinion of the Court of Appeals in *In re Penn Central Trans. Co., Appeal of Penn Central Co.*, 520 F.2d 1388 (3d Cir. 1975), none of these factors, alone or in combination, provides justification for injunctive interference by a reorganization court. The merits of the Court of Claims action are for the Court of Claims to decide, and the possibility that the magnitude of a claimant's entitlement under a plan of reorganization may be affected by recovery in the Court of Claims from sources other than the Debtor's estate is a circumstance beyond the control of the Reorganization Court.

409 F.Supp. at 1082–83.

■ The central issue before us, then, is whether any distribution to Irving Trust from the escrow fund could meaningfully delay or impair the PCTC reorganization. The most important fact of which we must take note in deciding this question is that the proceeds from the escrow fund can, in no circumstance, be distributed to the debtor's estate. Whatever part of the fund is not distributed to Irving Trust will be distributed to the shareholders and their attorneys. This is fitting since the escrow fund is part of the settlement of litigation in which the PCTC was alleged to be the prime wrong-doer and the prime beneficiary of the wrong-doing. Thus it seems

**3.** Also, *see Steelman v. All Continent Corp.*, 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937); *Continental Illinois Nat'l Bank and Trust Co. v. Chicago Rock Island & Pacific Ry.*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); *In re Investors Funding Corp. of New York*, 547 F.2d 13 (2d Cir. 1970); *Diners Club, Inc. v. Bumb*, 421 F.2d 396 (9th Cir. 1970).

**4.** *See Callaway v. Benton*, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949); *Sherr v. Sierra Trading Corp.*, 492 F.2d 971 (10th Cir. 1974).

clear that the fund, since it cannot benefit the debtor's estate, is not property of that estate within the meaning of § 77(a). By the same reasoning, distribution to Irving Trust would not constitute a foreclosure of a lien on property owned by the debtor which is enjoinable under § 77(j). The actual shares of P&LE stock are clearly property of the debtor's estate, but it is most improbable that any distribution of the escrow funds to Irving Trust would diminish the value of those P&LE shares held by the PCTC or its successor or affect them in any way.

The PCTC trustees argue that they have not agreed and have not been authorized by the reorganization court to agree that they have no claim or interest in the escrow fund. They state "Alternatives available to the reorganization court include reducing the cash payment to the bondholders under the plan by the amount of $918,552 or requiring Irving Trust and the bondholders to assign to the Company whatever rights they may have to the fund." Appellee's Brief, pp. 19–20.

The terms of the settlement agreement, as approved by the reorganization court, preclude any direct access by the PCTC estate to the fund. See Appellant's Appendix, pp. 41–42. The alternatives described by the trustees contemplate some distribution to Irving Trust from the fund of which the trustees could subsequently take advantage. Even if we assume arguendo that the reorganization court could pursue such alternatives and might desire to do so in the future, the injunction here would not be necessary to keep these options open. Therefore, the injunction does not serve to prevent any impairment to the administration of the estate that might result from the reorganization court's being foreclosed from pursuing these alternative courses of action. Thus, the need to keep such options open is not a basis of jurisdiction for the reorganization court's action here.

It is now clear that, by reason of the opinions of this court filed on January 11, 1979, dealing with the PCTC plan of reorganization, Irving Trust has no rights to the fund and, therefore, the reorganization court will have no need to pursue such alternatives. As mentioned above, Paragraph 3(c)(iii) of the settlement agreement provides that Irving Trust may receive distributions from the escrow fund only if it is determined that it has a valid and enforceable lien against the P&LE shares or their proceeds and it is determined that the value of those shares or proceeds is "not sufficient to compensate the bondholders for the amount determined to be due them . . . ."

The PCTC plan of reorganization has been approved,[5] confirmed,[6] and consummated[7] by the reorganization court and that approval, confirmation and consummation has been affirmed by this court.[8] The plan treated the claims of Irving Trust's bondholders as being more than fully secured.[9] Moreover the approval of the plan on both the district court and appellate level was premised on a finding that those bondholders were fully compensated.[10] The effect of the consummation of the plan was to discharge the liens of the bondholders under the Collateral Trust Indentures.

Thus it is clear that, as a result of the consummation of the Plan, Irving Trust no longer has an enforceable lien on the P&LE shares; that, since the claims of Irving Trust's bondholders were treated as fully secured, the P&LE settlement fund in no

5. *In re Penn Central Transportation Co.*, 458 F.Supp. 1234 (E.D.Pa.1978).

6. *In re Penn Central Transportation Co.*, 458 F.Supp. 1364 (E.D.Pa.1978).

7. *In re Penn Central Transportation Co.*, 458 F.Supp. 1364 (E.D.Pa.1978).

8. *In re Penn Central Transportation Co.*, 596 F.2d 1127 (3d Cir. 1979); *In re Penn Central*

*Transportation Co.*, 596 F.2d 1102 (3d Cir. 1979); *In re Penn Central Transportation Co.*, 596 F.2d 1155 (3d Cir. 1979).

9. *See id.*, 1141.

10. *See, id.*, 1144–1145.

way impaired the value of Irving Trust's collateral; and finally that, since this court and the reorganization court have concluded that Irving Trust's bondholders were fully compensated, Irving Trust is not entitled to any distribution from the fund.[11]

### III.

The trustees have advanced an alternative analysis aimed at establishing the reorganization court's jurisdiction to enter the injunction. This argument has three premises: 1. As owners of the P&LE stock they have the right to share in distributions of P&LE assets to shareholders and that such right is a chose in action. 2. The chose in action is, in itself, property of the estate. 3. The trustees by joining in the settlement have agreed to waive this right. From these premises, the trustees conclude, "The $918,552 fund, as compensation for the waiver or release of the Trustees' chose in action, is proceeds of property of the Debtor over which the reorganization court is given exclusive jurisdiction." Appellee's Brief, p. 18. Although we accept the three premises listed above, we cannot accept the conclusion advanced by the PCTC trustees because the conclusion presumes an additional premise that is clearly false. The escrow fund is *not* compensation for the waiver or release of the trustee's cause of action. The compensation for the trustees' waiver or release is the waiver or release of claims against the debtor's estate. The escrow fund is compensation to Irving Trust and/or the 7% shareholders for the release of their claims. Therefore, the trustees' analysis fails because the escrow fund is not compensation for the trustees' waiver, is not proceeds of property of the debtor and is thus not itself property of the debtor subject to the reorganization court's exclusive jurisdiction.

### IV.

The trustees also assert that Irving Trust, by acquiescing in the jurisdiction of the reorganization court to authorize the trustees to join in the settlement, waived its right to challenge the reorganization court's jurisdiction to enter the injunction here. While it is questionable whether the right to challenge jurisdiction can be waived at all in these circumstances, we need not reach that issue because it is quite clear that there was no waiver here. The reorganization court certainly had jurisdiction to authorize the trustees to join in the settlement because, as a result, certain claims of the estate were released. Jurisdiction over the escrow fund is a separate matter. Conceding the existence of jurisdiction with respect to the former is in no way inconsistent with challenging jurisdiction with respect to the latter. Therefore, no waiver results from merely conceding the existence of the former jurisdiction. To the extent that the trustees argue that any statement by Irving Trust's counsel at the hearing on this issue before the reorganization court constituted a waiver in and of itself, we also reject this argument. The record reveals that Irving Trust's counsel, Mr. Weiner, consented only to the reorganization court's approving the settlement immediately and reserving decision on the injunction issue, a procedure which the reorganization court did not choose to follow.

*James Talcott, Inc. v. Glavin*, 104 F.2d 851 (3d Cir.), *cert. denied*, 308 U.S. 598, 60 S.Ct. 130, 84 L.Ed. 501 (1939), the only case cited by the trustees on the waiver issue, does not lead to a contrary conclusion. There the appellant had instituted summary proceedings before the bankruptcy court to recover certain property allegedly assigned to it. This court decided that to rule on such issue the court below must necessarily decide whether the assignment was valid. Once it decided that the assignment was invalid, it could properly decide that appellant's claim to other property received by the same assignment was "merely colorable" and the court would therefore have the right to order appellant to turn over the property in summary proceedings. If the appellant in *Talcott* had not first submitted

---

**11.** As a procedural matter, Irving Trust's right to the fund must be initially decided by the court presiding over the P&LE litigation since only that court has jurisdiction over the escrow fund in issue here. Therefore, this decision cannot formally foreclose access by Irving Trust to the fund.

the issue of the validity of the assignments to the bankruptcy court, that court could not, in summary proceedings, have determined that appellants claim to the property was merely "colorable" and therefore order its turnover. Thus *Talcott* involved only the waiver of a right to plenary as opposed to summary proceedings. More significantly, the reorganization court's determination with respect to the Trustee's participation in the settlement agreement here did not provide a predicate for jurisdiction over the escrow fund in the manner that the determination of the invalidity of the assignment in *Talcott* provided a predicate for the summary proceedings there. Thus *Talcott* is far removed legally and factually from this case.

For the foregoing reasons, we conclude that the reorganization court was without jurisdiction to enter the injunction complained of here, and we will accordingly reverse and order that the injunction be vacated.