In re UNITED MERCHANTS AND MANUFACTURERS, INC., et al., Debtors.

UNITED MERCHANTS AND MANU-FACTURERS, INC. and United Factors, Inc., Plaintiffs,

v.

UNION BANK, Lloyds Bank of California, Manufacturers Bank, the Chartered Bank of London, Citibank International, Crocker National Bank, Crocker United Factors, Inc., San Francisco Shirt Works, Troy of California International, Wilshire Bedding Co., Inc., Allie B., Inc., Fantastic International, Monarch Knit & Sportswear, Inc., Kennington Ltd., Inc., and K. W. International, Inc., Defendants.

Arrangement Nos. 77 B 1513–77 B 1888.

United States Bankruptcy Court, S. D. New York.

March 25, 1980.

See also, D.C., 1 B.R. 520.

Levin & Weintraub, New York City, for debtor by Michael J. Crames, Mitchell Perkiel and Myron Trepper, New York City, of counsel.

Stroock & Stroock and Lavan, New York City, Gen. Counsel for debtor by Lawrence Handelsman and Alan Kolod, New York City, of counsel.

Hahn, Hessen, Margolis & Ryan, New York City, for Crocker National Bank and Crocker United Factors, Inc. by Michael S. Landes, Gabriel B. Schwartz and Samuel J. Reiser, New York City, of counsel.

Shearman & Sterling, New York City, for Citibank International Los Angeles and Fantastic International of California by Mark P. Zimmett and George J. Wade, New York City, of counsel; and Graham &

James, Los Angeles, Cal., by Edward J. Eckert, Los Angeles, Cal., of counsel.

Natanson, Reich & Barrison, New York City, for Wilshire Bedding Co., Inc. by George Natanson, New York City, of counsel.

Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for Lloyd Bank California and co-counsel for Manufacturers Bank, San Francisco Shirt Works, Chartered Bank of London, Allie B., Inc. and Troy of California by Arnold M. Quittner, Bernard Shapiro and Richard S. Berger, Los Angeles, Cal., of counsel.

Cohen, Freeman & Broker, Los Angeles, Cal., for Union Bank, Monarch Knit & Sportswear, Inc. and Kennington, Limited by Lee J. Cohen and Barry V. Freeman, Los Angeles, Cal., of counsel.

Schwartz, Alschuler & Grossman, Los Angeles, Cal., for Manufacturers Bank and co-counsel for San Francisco Shirt Works by Bruce Warner and Robert A. Schlachter, Los Angeles, Cal., of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

The debtor, United Merchants and Manufacturers, Inc. (UM&M) and most of its subsidiaries, filed separate petitions in this court on July 12, 1977 seeking the benefits of the provisions of Chapter XI of the now-repealed 1898 Bankruptcy Act. Sections 301 *et seq.*, 11 U.S.C. (1976 ed.) §§ 701 *et seq.*[1] In the course of the unfolding of the scheme of Chapter XI, a unitary plan was filed after an order of substantive consolidation became final, see *e. g., Continental Vending Machine Corp. v. Wharton*, 517 F.2d 997 (2d Cir. 1975); *Chemical Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966). That plan was accepted by the creditors as called for by the relevant statutory provisions and it was confirmed in June, 1978.

---

1. The 1898 Act was repealed by Section 401(a) of Title IV of the 1978 Bankruptcy Reform Act effective October 1, 1979. Section 402(a). By virtue of Section 403(a), the new Code will not apply to this debtor whose "case was commenced under the [1898] Bankruptcy Act" and must therefore be dealt with as though the 1978 Act had not been enacted. See *Guardian Mortgage Investors v. Unofficial Noteholders-Debentureholders, etc.*, 607 F.2d 1020 (2d Cir. 1979), at fn. 6.

Among UM&M's subsidiaries subject to the reach of the Chapter XI process was United Factors, Inc. (UFI), a Delaware corporation, then engaged in the factoring business and based in Los Angeles, California. On June 29, 1978, just prior to confirmation of the single plan offered to creditors, UM&M and UFI began an action by filing a complaint. This action, an adversary proceeding under Part VII of the Bankruptcy Rules, Rules 701 *et seq.*, 411 U.S. 1068, 93 S.Ct. 3147, 37 L.Ed.2d LXVi, applicable in Chapter XI cases by force of Rule 11–61, 415 U.S. 1037, 94 S.Ct. 3258, 39 L.Ed.2d Lii, cited fifteen entities as defendants, and alleged six causes of action including two for the recovery of money, two for injunctive relief, one for a declaratory judgment, and the last for an accounting.

The defendants may be grouped in this way: five are California banks;[2] eight are former clients of UFI, also organized and located in California.[3] The remaining defendants are Crocker Bank (Crocker) and Crocker United Factors, Inc. (CUFI), both organized under the laws of California, the latter a wholly-owned subsidiary of the former, with its principal place of business in Los Angeles, California.

In a synthesis of what the parties describe at length, the relationship between them may be summarized generally as follows: UFI was a factoring subsidiary of UM&M. The client defendants (clients) were companies which imported goods from abroad pursuant to letters of credit issued by the bank defendants (banks). The clients gave the banks security interests in the underlying goods. Because the banks were reluctant to rely exclusively on the credit of the clients, the latter entered into factoring agreements with UFI which allowed the banks to look to UFI for payment of the letters of credit before allowing release of the goods to the clients. UFI would then pay the banks and later collect from the clients under factoring agreements pursuant to which the clients had assigned their accounts receivable to UFI. UFI's payment to the banks was with its own negotiable instrument, *i. e.*, a trade acceptance.

UFI says that its issuance of a trade acceptance absolved the clients from any further liability to the banks, and that they were from then on liable only to UFI; that when UFI's trade acceptance was issued to the bank (whether ultimately paid or not) the client's liability for that amount became due and owing, and that any credit balance in that client's account could properly be charged by UFI to pay the debt to itself. UFI thus claims that $5.5 million worth of unpaid trade acceptances was outstanding at the date the petition was filed, for which UFI had charged the various clients. This is the so-called "fund" which UFI claims was in its possession while a debtor in possession, a status attendant upon the filing of its Chapter XI petition under Section 342, 11 U.S.C. (1976 ed.) § 742, and which it is alleged has been improperly removed from UFI's possession.

### Plaintiffs' Causes of Action

Plaintiffs allege six substantive causes of action in their complaint. The first is asserted against all fifteen defendants and seeks a declaratory judgment that as of the date of the filing of its Chapter XI petition UFI had issued unpaid trade acceptances to the bank defendants in the amount of $5,545,466.28, and that the liabilities arising out of those trade acceptances were to the banks as general unsecured creditors. Sensing, and as things have emerged, pre-

---

**2.** Each of the bank defendants is a corporation organized and existing under the laws of the State of California and is engaged in the business of banking with principal place of business in Los Angeles, California. The banks are: Union Bank, Lloyds Bank of California, Manufacturers Bank, The Chartered Bank of London, and Citibank International.

**3.** Each of the client defendants is a corporation organized and operating under the laws of the State of California with principal place of business in various cities in California. The client defendants are Allie B., Inc.; Fantastic International; K. W. International, Inc.; Kennington Ltd., Inc.; Monarch Knit & Sportswear, Inc.; San Francisco Shirt Works; Troy of California, Inter-National; Wilshire Bedding Co., Inc.

sciently, that at least some of the defendants would interpose objection to this court's jurisdiction to hear this controversy, see discussion, *infra*, UFI alleges that it was entitled to and did charge the clients' accounts for the respective amounts of their liability on these trade acceptances at the time the acceptances were issued, and thus had possession at the time of the filing of the now dissipated "proceeds" of those charges. From these allegations UFI seeks judgment declaring its entitlement to the proceeds of the charges made to the clients' accounts "purportedly made for payment of trade acceptances . . ." and that "such trade acceptances are general unsecured liabilities" of the UFI estate, (¶ 12 of the complaint, and ¶ A in the "wherefore" clause).

The second cause of action is asserted only against the five bank defendants. Here, plaintiffs seek recovery of money "inadvertently" paid by UFI after its petition was filed on behalf of the clients on trade acceptances issued prior to July 12, 1977—the filing date. UFI alleges that these payments were transfers denounced by Sections 70d(1) and (5), 11 U.S.C. (1976 ed.) §§ 110d(1) and (5), and therefore a classic case for the application of the turnover power, "one primarily to get at property", *Maggio v. Zeitz*, 333 U.S. 56, 63, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948). Accordingly, the second cause of action seeks an order directing the five banks to turn over just under $3 million.

The third cause of action seeks judgment for a turnover of about $2.3 million alleged to have been paid by certain clients to certain banks in satisfaction of UFI's trade acceptances which payments, it is concluded, were wrongfully made out of the estate, and are thus recoverable.

The fourth cause of action, against Crocker and CUFI, recites a sale, pursuant to various formal and informal contractual agreements, approved by orders of this court of July 25, 1977 and October 18, 1977, of UFI's "business and goodwill" to Crocker and CUFI (jointly referred to as the Crocker Agreement). As UFI views it, the terms

of the contract of sale required CUFI and Crocker to "charge" the accounts of various clients as the appropriate trade acceptances issued by UFI became due, and to deposit the proceeds in a separate account. UFI alleges that Crocker and CUFI violated those agreements in failing to perform as thus required. Moreover, UFI alleges, Crocker and CUFI released monies to clients to enable them to pay their banks directly, which amounts UFI is entitled to recover from Crocker and/or CUFI, after first receiving a full account which will disclose the extent of the liability of these defendants on this cause of action.

The fifth cause of action against Crocker and CUFI seeks to compel them to commence an interpleader action to determine the rights of UFI and the banks to those monies represented by proceeds of charges against the clients' accounts already described in the fourth cause of action, inasmuch as Crocker and CUFI's failure to do so is in violation of the Crocker Agreement.

The sixth cause of action seeks injunctive relief against all the defendants; it is sought to enjoin the banks from collecting on UFI's trade acceptances from the clients directly; to enjoin Crocker and CUFI from releasing more funds to the clients for use in paying the banks; and to enjoin all the defendants from any further transfers in diminution of the UM&M estate.

Finally, UFI and UM&M seek their costs and disbursements of this action, including reasonable counsel fees.

### Defendants' Motions

All of the bank and client defendants have filed or joined in motions to dismiss the complaint for want of jurisdiction in this court to determine the merits, for want of personal jurisdiction, and for failure to state a claim under Rule 712(b), the Bankruptcy Rules' mate to Rule 12(b)(6), F.R. Civ.P., Bankruptcy Rule 712(b), 411 U.S. 1074, 93 S.Ct. 3151, 37 L.Ed.2d lxviii, makes F.R.Civ.P. 12(b) applicable in this controversy. Alternatively, movants invoke Bankruptcy Rule 782, 411 U.S. 1086, 93 S.Ct. 3161, 37 L.Ed.2d lxxiii, to support transfer

of this controversy to California, where, it is not disputed, all the defendants are based. One client defendant, Wilshire, has filed its own motion, stating essentially the same grounds as those set forth in the joint motion; another client defendant, Fantastic, has joined with Citibank on a similar motion. Numerous affidavits have been submitted in support of these motions, as have exhibits supporting the defendants' refutation of plaintiffs' causes of action.[4]

Defendants, Crocker and CUFI, moved separately for dismissal of the complaint for its failure to state a claim for relief under Rule 712(b); alternatively, they request summary judgment under Rule 756, the analogue of Rule 56, F.R.Civ.P., and have submitted the statement called for by Rule 9(g) of the General Rules of the District Court for this District. Crocker and CUFI do not contest this court's jurisdiction; rather, they consent to it and have presented their case in full on the merits. The other defendants have vigorously pressed their contention that this court is bereft of jurisdiction over this dispute.

The front line position of the defendants, other than Crocker and CUFI, is that the court lacks jurisdiction over the merits of this controversy for, they maintain, there is no property in the actual or constructive possession of the court, the predicates of jurisdiction here. In fact, these defendants claim there is no property as there is no "fund" at all, as plaintiffs describe it, but merely, at best, a claim by UM&M/UFI to collect receivables, which is an intangible, a chose in action, or a claim for breach of contract or tortious conduct. None of the above, defendants insist, bring this suit within this court's jurisdiction, *In re Roman*, 23 F.2d 556 (2d Cir. 1928), absent consent, express or implied. The result, these movants assert, is that this court must either dismiss as to them or transfer elsewhere. And so it appears to this court that defendants' formidable defense of want of jurisdiction must be dealt with first

before dealing with any other grounds seeking dismissal and, indeed, before this court turns to the motion by Crocker and CUFI which did not assert want of jurisdiction. Accordingly, the court need not at this stage of its decision tarry long with the Rule 12(b)(6) standards described by ever so many courts and textwriters that a complaint should not be dismissed unless the cause of action "is wholly frivolous", *Hart v. B. F. Keith Vaudeville Exchange*, 262 U.S. 271, 274, 43 S.Ct. 540, 541, 67 L.Ed. 977 (1923), or unless it is certain that plaintiff cannot prevail under any state of facts, *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *A. T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir. 1967). See also 2A *Moore's Federal Practice* (2d ed.) ¶ 12.08. Indeed, unless this court has jurisdiction, the less said about the merits the better, lest, if jurisdiction here is found wanting, the parties read more into what this court says than was intended.

### The Defense of Want of Jurisdiction

A brief excursion into this perplexing area of bankruptcy jurisprudence, though presumably well understood by the parties, seems appropriate, for while they worship at the same altar, the parties differ as to the vintage of the wine in the chalice.

The Supreme Court has said in, among others, *Thompson v. Magnolia Petroleum Co.* (1940), 309 U.S. 478, at 481, 60 S.Ct. 628, at 630, 84 L.Ed. 876 that:

> "Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession."

and in *Cline v. Kaplan* (1944), 323 U.S. 97, at 98–99, 65 S.Ct. 155, at 156, 89 L.Ed. 558 that:

> "[I]f the property is not in the court's possession and a third person asserts a bona fide claim adverse to the receiver or trustee in bankruptcy, he has the right to have the merits of his claim adjudicated 'in suits of the ordinary character, with

---

**4.** The receipt of these papers which go beyond the face of the complaint effectively converts the Rule 12(b)(6) prong of the defendants' mo-

tions to one for summary judgment under F.R. Civ.P. 56 which is applicable here by the plain language of Bankruptcy Rule 756.

the rights and remedies incident thereto.' *Galbraith v. Vallely,* 256 U.S. 46, 50 [, 41 S.Ct. 415, 416, 65 L.Ed. 823]; *Taubel-Scott-Kitzmiller Co. v. Fox,* 264 U.S. 426 [, 44 S.Ct. 396, 68 L.Ed. 770]. But the mere assertion of an adverse claim does not oust a court of bankruptcy of its jurisdiction. *Harrison v. Chamberlin,* 271 U.S. 191, 194 [, 46 S.Ct. 467, 468, 70 L.Ed. 897]. It has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial. *Louisville Trust Co. v. Cominger,* 184 U.S. 18, 25, 26 [, 22 S.Ct. 293, 296, 46 L.Ed. 413]. Once it is established that the claim is not colorable nor frivolous, the claimant has the right to have the merits of his claim passed on in a plenary suit and not summarily. Of such a claim the bankruptcy court cannot retain further jurisdiction unless the claimant consents to its adjudication in the bankruptcy court. *MacDonald v. Plymouth County Trust Co.,* 286 U.S. 263 [52 S.Ct. 505, 76 L.Ed. 1093]."

It was in response to the holding in *Cline v. Kaplan, supra,* that Congress enacted Section 2a(7), 11 U.S.C. (1976 ed.) § 11a(7) in 1952.[5] That section and its restatement in Rule 915(a), 411 U.S. 1098, 93 S.Ct. 3170, 37 L.Ed.2d lxxix, required that the assertion of the defense of want of jurisdiction be made in the answer or, as in the case at bar, by motion, failing which the defense would be waived and consent to the bankruptcy court's jurisdiction implied regard-less of the existence of property in the court's possession, actual or constructive—what has come to be characterized in some circles as "jurisdiction by ambush." By and by, the notion that one could be said to have consented to the exercise by a bankruptcy court of a jurisdiction it would not otherwise have had by filing a claim against the bankrupt's assets was adopted by the Supreme Court in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). While that decision upheld the bankruptcy court's jurisdiction

> "to order return of a preference whether or not the preference relates to the same transaction as the claim . . . ."

382 U.S. at 326, fn. 1, 86 S.Ct. at 471, fn. 1, some of the Courts of Appeals were split on such jurisdiction depending upon whether or not the trustee's counterclaim related to the same transaction as that supporting the creditor's claim. 382 U.S. at 326, fn. 1, 86 S.Ct. at 470–471, fn. 1. What emerges clearly from *Katchen v. Landy* is that jurisdiction was found there without the existence of property in the court's possession for that trustee's suit was based on his power to avoid a preference under Sections 60a and b, an action given to a state court or the United States District Court by Section 60b.[6]

▮ A point of this journey is to demonstrate that under the 1898 Act, the bankruptcy court's jurisdiction is based on a *res* in its possession, actual or constructive, or on consent by the party adverse to the trustee.[7]

---

**5.** See H.R.Rep. No. 2320, 82d Cong., 2d Sess. 4 (1952).

**6.** The same was true in respect of other actions to avoid transfers of property given bankruptcy trustees by the 1898 Act. See Section 67e, 11 U.S.C. (1976 ed.) § 107e (fraudulent transfers) and Section 70e(3), 11 U.S.C. (1976 ed.) § 110e(3) (transfers fraudulent other than under Section 67). The phrase "court of bankruptcy" used in these sections and in Section 60b to define it as a repository for jurisdiction where the bankruptcy court was bereft of jurisdiction for want of property in its possession or consent meant a United States District Court under the definition set out in Section 1(10), 11 U.S.C. (1976 ed.) § 1(10). See *Katchen v. Lan-*

*dy, supra,* at 336; 2 *Collier on Bankruptcy* (14th ed.) ʿ 23.15.

**7.** This opinion refrains, and deliberately so, from characterizing this court's jurisdiction as "summary" or another court's as "plenary", the latter an adjective found in Sections 60b, 67e and 70e(3) of the Act.

Over the years, the word "summary", as the modifier of this court's jurisdiction, has acquired an ambivalent patina to denote something less than a full hearing with proper safeguards afforded the litigants rather than to denote that matters "of an administrative character . . . which are presented in the ordinary course of the administration of the bankrupt's estate", *Taylor v. Voss,* 271 U.S.

Another point to be made concerning what has been said and still remains to be said in this decision is that it highlights the serious delays, expense and duplications which have

"embroiled the court and the parties in voluminous litigation whose sole function is to determine whether the court possesses the requisite summary jurisdiction to determine the merits of issues often necessarily heard by the court in determining its jurisdictional question."[8]

■ Whatever else the 1978 Bankruptcy Code achieves, it confers pervasive jurisdiction on the bankruptcy courts, new 28 U.S.C. §§ 1471 et seq., and it eliminates the "idea of possession or consent as the sole basis for jurisdiction." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 445 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6400. However, the Senate might have differed from the House of Representatives in some aspects of the 1978 legislation, it also thought the elimination of the summary-plenary distinction in the 1898 Act to be desirable. See S.Rep. No. 95–989, 95th Cong., 2d Sess. 153 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

And so, at last, the court faces up to its task of determining whether it is empowered to resolve this formidable dispute on the merits at least as to those defendants, other than Crocker and CUFI, who so vigorously urge otherwise.

176, 181, 46 S.Ct. 461, 463, 70 L.Ed. 889 (1926), are intended to be heard and determined quickly to the end that diligent disposition of property might more speedily inure to the benefit of creditors. It seems obvious that proper procedural safeguards before a bankruptcy court must be present to the satisfaction of Congress (Section 2a(7)) and to the Supreme Court (e. g., *Katchen v. Landy*) for, otherwise, consent to jurisdiction would not be lightly countenanced at the risk of the rights of a defendant in a trustee's suit. Indeed, the coming in 1973 of Part VII of the Bankruptcy Rules, 411 U.S. 1068 et seq., 93 S.Ct. 3147 et seq., 39 L.Ed.2d lii et seq. should by now have removed any invidious connotation to the word "summary".
The point need not be labored. This court views the matter differently, obviating the need for modifiers or labels. The bankruptcy court either has jurisdiction or it does not. The predicate of its jurisdiction, as seen, is either pos-

At the outset it must be found that whatever the premise for jurisdiction over this controversy, concededly "not rigidly delineated", *In re Eastern Freightways, Inc.; Gluck v. Seaboard Surety Co.*, 577 F.2d 175 (2d Cir. 1978), and "expanded to meet the exigencies of particular fact situations", *Law Research Service, Inc. v. Crook*, 524 F.2d 301, 314 (2d Cir. 1975), such jurisdiction cannot be founded on consent, express or implied, nor on waiver. The record is barren of any intimation that, by their action, these objecting defendants have ambushed themselves. And the motion papers make clear that they have not run afoul of the strictures of Section 2a(7) and Rule 915(a). The plaintiffs do not contend otherwise.

■ When all is said and done, therefore, the linchpin of jurisdiction, if it is here at all, is the existence of an actual *res*, not a mere chose in action.[9] *In re Roman, supra.*

Those defendants who resist this court's jurisdiction claim that there is no *res* and that they defy the plaintiffs to show a *res* sufficient for jurisdictional purposes because, they say, all that there really is here are intangible choses in action, admittedly not enough.

Accepting the invitation, UM&M and UFI insist that as of the date of the Chapter XI filings on July 12, 1977, UFI had

session of property or some conduct of the adverse claimant rising to the level of consent.

8. See S.Rep. No. 95–989, 95th Cong., 2d Sess. 17 (1978). See also H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 49, 445 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5803. These reports are relevant to the 1978 Code, effective from October 1, 1979 and applicable only to cases filed under its provisions. See fn. 1, *supra.*

9. The word "res" is used rather than the word "property" because the latter also comprehends rights of action under Section 70a(5), 11 U.S.C. (1976 ed.) § 110a(5). While intangibles are. therefore "property" for purposes of the trustee's estate, they are a different kind of property where, as here, their character goes to the trustee's ability to gather the estate and marshal the assets in the bankruptcy court rather than in another forum.

properly issued $5.5 million in trade acceptances to the banks, and had charged the respective clients' accounts thus, they urge, creating a cash fund in the possession of the estate, and therefore actual property adequate to ground jurisdiction here. On the argument of the motions to dismiss, counsel to the plaintiffs elaborated in these words:

> "Also on July 12, 1977 . . . there existed assets of this estate, rights which these debtors, which UFI, had to collect from its factored clients sums equal to its obligations to the banks in connection with the trade acceptances which had been issued. Whether you call it a fund of five and a half million dollars in cash, whether you call it accounts receivables, whether you call it choses in action, on the date of the filing of these petitions there were assets of these estates in that amount which UFI and UFI alone had the right to receive."

Minutes of Hearing, December 6, 1978, pp. 83–84.

In sum, plaintiffs take the position that an actual $5.5 million cash fund did exist in the debtor's actual or constructive possession as of the date of filing, that approximately $2.3 million was "inadvertently" transferred by UFI to the banks post-petition, and that another $2.2 million, collected by CUFI on behalf of UFI pursuant to the Crocker Agreement, was "wrongfully" transferred by CUFI either directly to certain banks or to the clients to pay the banks.[10]

### The Bank/Client Motions to Dismiss For Want of Jurisdiction

As briefly described, *supra,* all the bank and client defendants have moved to dismiss the complaint for want of this court's jurisdiction, for lack of personal jurisdiction, for failure of causes of action 1, 2, 3 and 6 to state a claim, or, alternatively, if jurisdiction is found to exist, for transfer to the District Court in California, under Rule 782.[11]

To the extent relevant here, the first cause of action, one for a declaratory judgment, alleges that:

> "Pursuant to factoring agreements, United Factors obtained for . . . the Client Defendants, letters of credit from . . . the Bank Defendants . . . Each letter of credit purported to grant to the Bank Defendant a security interest in the merchandise which was to be paid for by that letter of credit.

> Upon presentation of appropriate documentation by the seller, the Bank Defendants would obtain from United Factors notes commonly referred to . . . as a . . . trade acceptance . . . The Bank Defendants thus substituted the promise to pay of United Factors . . . for the obligations which existed under the letters of credit and relinquished their security interest in the merchandise.

> . . . United Factors would pay the trade acceptances to the Bank Defendants at maturity, and would simultaneously charge the account of the appropriate Client . . . .

> On July 12, 1977, the date of the filing of their petition for arrangement under Chapter XI of the Bankruptcy Act, United Factors and United Merchants had unpaid trade acceptances in favor of the

---

**10.** At the hearing, UFI alleged that the necessary records showing the creation of this "fund" and documenting the transfers was in the possession of other parties; permission was granted for UFI to submit such evidence after the hearing. Subsequently, UFI submitted a daily record of letters of credit, purportedly to show that the clients' accounts were charged for the amount of trade acceptances issued on their behalf as soon as they were issued. From this record, plaintiffs insist, an actual fund in UFI's possession was created, although they are unable to suggest any way in which they could have drawn on this fund. Indeed, the above tautological excerpt from counsel's argument accurately reflects plaintiffs' problem in trying to fasten jurisdiction here.

**11.** Separate motions by Wilshire Bedding and Fantastic/Citibank are treated together with the arguments of the joint defendants, as are those portions of Crocker/CUFI's motion for summary judgment in their favor on the merits which overlap those points touched on by the other defendants.

Defendant Banks of $5,545,466.28 . . . The liabilities arising out of those trade acceptances, at best, give rise to general unsecured claims against [the debtors]. As between plaintiffs and the Bank Defendants, plaintiffs are entitled to the proceeds of the charges to the Client Defendants' accounts in payment of the letters of credit.

By reason of the foregoing, plaintiffs are entitled to a declaration that United Merchants and United Factors, debtors and debtors in possession, are entitled to the proceeds of the charges to the Client Defendants' accounts purportedly made for payment of trade acceptances outstanding on July 12, 1977 and that such trade acceptances are general unsecured liabilities of the plaintiffs' estate."

■ An action for declaratory judgment 28 U.S.C. § 2201, Rule 57, F.R.Civ.P., enables the court to resolve "actual disputes as to the rights and obligations of the parties [where] the controversy may not have ripened to a point at which an affirmative remedy is needed." Wright, *Federal Courts* (2d edition) § 100, p. 446.

■ · It is well established that the main prerequisite to the availability of such relief is that the court be presented with a justiciable controversy, *i. e.*, "the controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

The majority view concerning the reach of 28 U.S.C. § 2201 holds that the power to grant this relief is within the discretion of the court:

"[T]his is clearly implied from the fact that [28 U.S.C. § 2201] merely gives the court power to grant the remedy without prescribing any of the conditions under which it is to be granted, and it is hardly to be supposed that it was intended that it should be granted as of course in every case where a controversy exists."

*Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937).

■ But ripeness aside, the short of it is that an action for a declaratory judgment cannot expand the scope of a court's jurisdiction. If such jurisdiction is lacking, the remedy is inappropriate and may not be rendered. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

It is thus clear in this dispute that the threshold of this court's jurisdiction must be crossed before declaratory relief is appropriate, and in the context of this case, this means the court must find an actual *res*. Absent such jurisdictional foundation, the rendition of a declaratory judgment would, in effect, be tantamount to issuance of an advisory opinion as no final resolution of the matter here could result. Final relief in another forum would be necessary.

None of this implies that the remedy of a declaratory judgment is not available in the bankruptcy courts, given the necessary prerequisites of such court's jurisdiction, and the gloss placed on 28 U.S.C. § 2201, and Rule 57, F.R.Civ.P., by the cases, *e. g., Larson v. General Motors Corp.*, 134 F.2d 450, 453 (2d Cir. 1943). See *In re Williams, Williams v. Williams*, 5 BCD 951 (E.D.Ohio 1979).

Plaintiffs' second cause of action recites that:

"On and after July 12, 1977, United Factors inadvertently paid the Bank Defendants . . . [various] amounts . . for trade acceptances issued prior to July 12, 1977.

The payments on trade acceptances alleged [herein] . . . are transfers which are invalid under Bankruptcy Act §§ 70(d)(1) and (5), 11 U.S.C. §§ 70(d)(1) and (5) (sic), and thus are recoverable by United Factors and United Merchants. By reason of the foregoing, the Bank Defendants are indebted to plaintiffs in the amount of $2,293,853.55."

Here, the allegations are that by July 12, 1977, the filing date, UFI had already charged various clients' accounts and held "proceeds" in the sum of approximately $5.5 million. However, between the filing

of the petition on July 12, 1977 and early August, 1977, UFI "inadvertently" transferred approximately $2.3 million to CUFI to cover checks issued by CUFI in payment of trade acceptances as they matured. It appears, rather, that the parties believed and acted on the belief that CUFI had taken over UFI's factoring business, and that transfers made between the two were made in accordance with the terms of the Crocker Agreements. UFI claims, however, that the proceeds were assets of the estate which were mistakenly transferred and seeks to recover these monies from the banks in its second cause of action.

The objecting defendants claim that this court lacks jurisdiction over this second cause of action. In the first place, they say that pursuant to this court's order of July 13, 1977 which authorized the continuation of business with UM&M as debtor-in-possession, the contract made between UFI and CUFI transferred UFI's continuing business obligations as to certain clients to CUFI.[12]

They also allege that at least part of the payments made to the banks came out of funds belonging to CUFI, pursuant to their interpretation of the Crocker Agreement, and that these were not UFI's funds.[13]

Finally, these defendants, in support of their motion to dismiss for want of a *res* argue that at the least the debtor voluntarily transferred those "funds" paid to the banks in accordance with this court's order and with the terms of the agreement. So, they conclude, the property which the banks now hold under substantial and adverse claims of right is not in the possession of the debtor in the sense that jurisdiction is involved, that, at best, plaintiffs may have an action to recover, but that this court is not the forum to vindicate plaintiffs' rights, if any, because a chose in action is an intangible, not a physical *res*, and absent consent, jurisdiction cannot attach. Since they press alternative grounds, legal and factual, for their right to retain the funds, it follows, under *Harrison v. Chamberlin*, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 (1926), that their claim discloses a "contested matter of right involving some fair doubt and reasonable room for controversy . . . in matters either of fact or law." *In re Dolly Madison Ice Cream Inc.*, 504 F.2d 499 (3d Cir. 1974); *Hinds v. Moore*, 134 Fed. 221 (6th Cir. 1905).

In short, while not conceding that an actual fund exists, defendants say they hold such fund under claim of right sufficient to deprive this court of the ground of jurisdiction predicated on constructive possession. See *Sahn v. Pagano*, 302 F.2d 629 (2d Cir. 1962), *cert. denied* 371 U.S. 819, 83 S.Ct. 34, 9 L.Ed.2d 59 (1962); *In the Matter of Himoff Maritime Enterprises, Ltd., Kruger v. Himoff, et al.*, CBC (S.D.N.Y. December, 1979, Babitt, *B.J.*). Reduced to basics, having released property on whatever theory, plaintiffs cannot ask this court to get it back absent consent. As colorfully stated by the court in *Wikle v. Country Life Insurance Co.*, 423 F.2d 151, 154 (9th Cir. 1970):

> "Here, in effect, the trustee is chasing an airplane out of an airport when the plane has already taken off, made its flight and landed elsewhere."

See also 2 *Collier on Bankruptcy* (14th ed.) ¶ 23.05.

---

**12.** Order of this court dated July 12th [not 13th], 1977 stated that: "The debtor shall continue in possession of its property and shall have all the title and may exercise consistently with the provisions of Chap. XI of the Bankruptcy Act all the powers of a trustee . . . The debtor in possession is authorized to operate its business and manage its property pursuant to Section 343 of the Bankruptcy Act and Bankruptcy Rule 11–23 until the further order of this Court."

**13.** See Order Authorizing Debtor in Possession to Affirm Agreement with Crocker National Bank, July 25, 1977. This order approved the agreement of June 30, 1977 between UM&M, UFI, Crocker and CUFI and provided that: ". . . United Factors is authorized to collect accounts receivable and to pay over to (i) CUFI such portion of the collections as represent proceeds of receivables beneficially owned by CUFI . . . [and that] United Factors is authorized to pay in the ordinary course of business to clients of United Factors their credit balances which existed on July 13, 1977."

Sensing the force of these arguments, plaintiffs try to sidestep the contested facts but in so doing buttress the defendants' position that there was no actual *res* in UFI's possession on the filing date.

According to the plaintiffs' characterization, CUFI was UFI's "disbursing agent" for purposes of payment of pre-petition trade acceptances maturing post-petition, and thus may not assert any independent claim to the funds. Even if this overly simple view of the facts is accurate, it ignores the ultimate immutable fact that it is not CUFI but rather certain banks which hold the "property" UFI sues to have returned. But even if CUFI and the banks may be said to be holding property pursuant to a fraudulent or otherwise actionable transfer, this court would still be without jurisdiction to order turnover under *Harrison v. Chamberlin, supra,* for in light of the apparent voluntariness of the transfer and the apparent legality for such transfer afforded by the court-authorized sale of UFI's business, it cannot be said that the banks' claim of right to the fund is bereft of any legal or factual basis and so audacious as to ground jurisdiction, *Sahn v. Pagano, supra.*

These bank defendants had issued letters of credit to foreign companies on behalf of the domestic clients, had, in most instances, paid on these letters of credit and had released the goods to the clients on the strength of the trade acceptances issued by UFI wherein UFI promised to pay. It cannot be said that these banks, certainly out-of-pocket, do not make a substantial and adverse claim, leaving aside the question whether it was in fact CUFI's rather than UFI's funds which were paid out under the terms of the Crocker Agreement.

The third cause of action, also to recover money, states in relevant part that:

"On information and belief, on and after July 12, 1977, [certain] . . . Client Defendants paid to [certain] . . . Bank Defendants [a total of $2,288,025.30].

The payments alleged [above] . . . and any other such payments constitute assets of the estate of United Factors and

United Merchants of which they have been wrongfully deprived, and thus are recoverable by United Merchants and United Factors."

Thus, UFI alleges that between August and October, 1977 it transferred approximately $2.3 million to CUFI, which CUFI wrongfully paid out either to clients or directly to the banks in payment of letters of credit and UFI acceptances. This is UFI's reasoning. In August, 1977, upon UFI's realization that "inadvertent" payments were being made by CUFI with funds allegedly belonging to UFI, UFI informed the banks that such acceptances would no longer be paid at maturity. The banks then turned to the clients who were clearly obligated to pay on the letters of credit and the underlying transactions, and demanded payment from them on UFI's acceptances. At least three clients made payments directly to their banks, and as to the rest, CUFI apparently paid the banks out of receivables it had collected from the clients, in violation, UFI claims, of various terms of the Crocker Agreement.

To ground jurisdiction here, UFI's argument is that this court had actual possession of the sums claimed as of the date of the filing of the petition on July 12, 1977. Thereafter, UFI allegedly transferred those amounts to CUFI as a mere disbursing agent. UFI uses these words:

"[I]n the case of the Inadvertent Payments to the Banks on the Acceptances, CUFI disbursed funds to the Banks from its own bank accounts and simultaneously transferred to itself UFI funds in an amount sufficient to cover its own checks . . . . Similarly, when CUFI later obtained the additional funds from UFI with which it made the Wrongful Payments, CUFI asserted no claim to those funds in its own right."

UFI then concludes that CUFI's transfer of these funds post-petition while acting as agent of the former was patently improper and therefore the funds are in this court's constructive possession. UFI rests on Section 70d, 11 U.S.C. (1976 ed.) § 110d, which does denounce certain post-petition trans-

fers. The moving defendants counter by claiming that the funds were transferred from CUFI to the clients and/or the banks, even if those funds ultimately "belonged" to UFI, which they deny. Thus, it is not CUFI, but the banks which now hold that fund under an adverse claim. *Schmitt v. Blackwelder,* 379 F.2d 278 (2d Cir. 1967).

Plaintiffs' argument is premised on the assumption that the clients' obligations on the trade acceptances issued in satisfaction of the letters of credit ran only to UFI, and became due upon issuance of the acceptances, regardless of whether UFI ultimately paid them. The defendants, however, have made a substantial adverse showing that the clients were not indebted to UFI inasmuch as UFI never in fact charged their accounts, that the clients received no monies belonging to UFI, but to CUFI under the Crocker Agreement, and new factoring agreements, and, in any case, the funds were voluntarily transferred and are now held by third parties under claim of right.

In *In re Roman, supra,* prior to the filing of an involuntary petition, the bankrupt-to-be entered into an oral agreement with third parties in settlement of a claim proved by the former. Prior to payment, the involuntary bankruptcy petition was filed and the debtor was adjudicated. The other parties to the agreement, faced with a court directive to pay over the agreed amount, objected to the bankruptcy court's jurisdiction on the grounds that there was no contract, or alternatively, that the bankrupt had not performed certain acts required of him by the contract.

Judge Learned Hand, for the court, wrote that in fact the trustee was attempting to compel performance of the contract, using his rights therein as property which could ground the bankruptcy court's jurisdiction. The trustee's effort to enforce a chose in action in the bankruptcy court failed for lack of property within the court's possession, a basis for it to proceed. The court stated at p. 558 that:

"So far as possession can be imputed to such property at all, it is confined to the rights of the bankrupt to enforce the promise. The trustee must proceed as the bankrupt must have proceeded, in a court having competent jurisdiction in such causes."

In *Hollywood National Bank v. Bumb,* 409 F.2d 23 (9th Cir. 1969), where, pursuant to court order, the debtor had transferred property into escrow accounts to facilitate their sale by a bank, the debtor charged that the bank had violated the terms of the escrow agreement, and sought to recover damages alleging that the debtor's former possession of the property at the time of the filing of the petition constituted the basis for the bankruptcy court's jurisdiction. The court, in denying the bankruptcy court's jurisdiction made these observations particularly applicable to the instant dispute at 24–25:

"[W]here the existence of the chose in action is the issue in dispute—as here—the bankruptcy court cannot assume summary jurisdiction. . . .

Thus, since the present action is not to recover any specific property or fund which was once part of the bankrupt estate, but is, rather, to enforce a chose in action, *i. e.,* to collect damages for breach of contract . . . this is not a proper case for summary jurisdiction."

See also *In re Eakin,* 134 F.2d 717, 719 (2d Cir. 1946).

■ Where, as here, a debtor seeks to recover on a contractual claim against a third party holding a fund, if indeed there is a clearly earmarked *res,* this court's jurisdiction cannot be sustained absent consent, an element plainly and concededly absent here. How nicely it was put by the Third Circuit Court of Appeals in *In re Standard Gas & Electric Co.,* 119 F.2d 658, 661–2 (1941):

"In a broad sense a claim by a debtor against a third person is property of the debtor. . . . But it is a species of property which may only be realized upon . . . by the successful prosecution of a plenary suit against the third persons involved."

■ In sum, even where the debtor's claim to recovery on a chose in action is facially compelling, the bankruptcy court may not adjudicate that claim absent some predicate of jurisdiction to do so, for such debtor is not deemed to have actual or constructive possession of any property. See *In re Lehigh & Hudson River Rwy. Co.; Baker v. Troiano*, 468 F.2d 430, 433 (2d Cir. 1972).

■ UFI's second claim cannot support this court's jurisdiction given defendants' timely objection, for UFI admittedly transferred funds to CUFI and thence to the banks in payment of UFI's trade acceptances, apparently in the ordinary course of business pursuant to an order of this court and the terms of a court-approved contract of sale. Those funds are now held by the banks, probably not segregated, under a claim to entitlement as per the letters of credit and acceptances.

■ UFI's third cause of action to recover property admittedly held by third parties attempts to enforce the clients' contractual obligations under the factoring agreements. These, too, are choses in action and cannot be the basis for this court's jurisdiction to direct recovery absent consent. This premise is true regardless of plaintiffs' invocation of Section 70d, 11 U.S.C. (1976 ed.) § 110d, denouncing certain post-petition transfers. Even if that section gave the debtor a right of action on the facts here, which it does not,[14] the problem of this court's jurisdiction to vindicate such right remains. Congress drew no distinction among a trustee's or debtor's right to vindicate a claim based on a preferential transfer under Sections 60a and b, a fraudulent transfer under Section 67d, a fraudulent transfer under Section 70e, or a post-petition transfer under Section 70d, the predicate of the third cause of action. These are all rights of action to recover property held by the defendant. These cannot confer jurisdiction on this court, absent consent, for property in the form of an actual *res*, cannot be said to exist. Sections 60b, 67e and 70e(3) mean nothing if their essential significance is not that this court is not the forum, absent consent, express or implied, to recover the kinds of transfers to which they relate.

When Congress wanted to give this court jurisdiction to void certain transfers, it made its wishes plain. Thus, a transfer by judicial lien under Section 67a was avoidable by this court by express grant in Section 67a(4). Section 57L *, 11 U.S.C. (1976 ed.) § 93L *, also conferred jurisdiction on this court to recover property improperly paid to and in the actual possession of the defendant-creditor.

Apart, therefore, from the inapplicability of Section 70d to the events here, fn. 14, *supra*, there is nothing anywhere to suggest a jurisdiction over a kind of transfer contemplated there. This cause of action is, to quote District Judge Skinner, in *Continental Mortgage Investors*, unreported, 76–593 (D.C.Mass. February 1, 1980), in another context:

"very like the thirteenth stroke of a clock, which raises serious doubts as to the reliability of the first twelve strokes."

The allegations of the fifth and sixth causes of action asserted against all the defendants—bank, client, Crocker and CUFI, as much as anything else in the papers, reflect the slim reed offered by the plaintiffs as a basis for this court's jurisdic-

---

14. Plaintiffs' reliance on Section 70d appears to be misplaced. The sole purpose of that section was, as Circuit Judge Friendly saw it, "to protect certain transactions in the interval after the filing of an involuntary petition." *In re Texlon Corp., Otte v. Manufacturers Hanover Commercial Corp.*, 596 F.2d 1092, 1096 (2d Cir. 1979). The filing of these Chapter XI petitions were voluntary, as they had to be under Chapter XI of the Act, and such filing constituted an adjudication as of that filing under Section 302,

11 U.S.C. (1976 ed.) § 702. There was, therefore, no such gap period as Section 70d contemplated. *In re Texlon Corp., supra*, also at 1096.

* Because of the inability of the typewriter to plainly distinguish between a small letter l and the numeral 1 (one), this reference is to Section 57L for purposes of clarity, although the statute is cast in terms of 57 with a lower case L.

tion.[15]  Among other things, plaintiffs opine that the Crocker Agreement contemplated that Crocker and CUFI

> "agreed to commence . . . an interpleader action . . . to determine the right, as between United Factors and the Bank Defendants, to the monies which were *to be charged to the factored clients and deposited by Crocker and CUFI into a separate account.*" (emphasis added)

These allegations not only support a facially tenable legal and factual basis for the bank and client denial of this court's jurisdiction, but also snap the slimmer reed offered by the plaintiffs that there is an actual *res* to support jurisdiction.  The essence of these allegations is that money from some source be deposited in this court, and although conceding the right of Crocker and CUFI to release funds to certain client defendants and that the bank defendants "are continuing to seek to collect from . . . Client Defendants monies due on United Factors outstanding trade acceptances . . ." the court can conceive of no clearer admission that whatever monies are involved are held by third parties and are not "actual property" in the court's actual or constructive possession.  To be sure, Crocker and CUFI have consented to jurisdiction, thereby obviating the need for a *res*, but, as will be seen, the court treats with that consent on other grounds.

In these final causes of action against all the defendants, plaintiffs seek injunctive relief.  As the complaint appears to describe the ultimate facts, plaintiffs seek to enjoin Crocker and CUFI from further refraining to commence an interpleader action in a proper court to determine the rights of all the parties, to enjoin the bank defendants from collecting from some of the client defendants monies said to be UFI's, and to enjoin Crocker and CUFI from continuing to release monies to some

of the client defendants for their use in paying trade acceptances to the bank defendants.

In light of what has been said concerning want of jurisdiction over the bank and client defendants, and what appears to this court to be a sensible disposition of the Crocker/CUFI motion addressed to the merits, *infra*, and the fact that plaintiffs have not moved for interim injunctive relief, nothing more need be said concerning the standards for injunctive relief set for this circuit, *e. g., Caulfield v. Board of Education*, 583 F.2d 605, 610 (1978).  Further, as plaintiffs have not sought temporary restraint of the activities described in their fifth and sixth causes of action, there is no need to venture into the standards of such relief in the framework of the bifurcation of a bankruptcy court's jurisdiction and the overriding need that such court protect its general jurisdiction.  See, however, *Steelman v. All Continent Co.*, 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937); *Matter of Himoff Maritime Enterprises, Ltd.*, CBC (S.D.N.Y. December, 1979, Babitt, *B.J.*)

The court is satisfied from the preliminary inquiry called for by *Harrison v. Chamberlin, supra*, that the relationships among all the parties, including Crocker and CUFI which have consented to this court's jurisdiction, are dependent upon contractually created obligations pursuant to this court's orders.

The nature of those relationships, the duties and obligations they yielded, and the rights and corresponding liabilities drawn from them, are such that the disparate positions of the litigants here preclude this court from determining from the myriad papers filed on both sides that the defense of lack of jurisdiction by the bank and client defendants is so bereft of legal or factual basis as to warrant compelled submission.[16]

---

**15.**  A brief discussion of these causes is had, *infra.*

**16.**  Even the cursory examination of the papers filed thus far appropriate to the court's limited inquiry, *e. g.*, the letters of credit, the trade

acceptances, etc., reveals that the clients had solid grounds for assuming they would be held liable by the banks for goods received when the banks paid the foreign suppliers.  Both the clients and the banks had claims to monies—

### Summary Judgment Motion By Crocker and CUFI

In the fourth cause of action in their complaint, UM&M and UFI shift their attacks from the banks and clients to Crocker and CUFI. As to these defendants, plaintiffs allege:

"On October 19, 1977, a final agreement (the 'Crocker Agreement') was entered into among United Merchants, United Factors, Crocker and CUFI for the sale of the business and goodwill of United Factors. The Crocker Agreement had been approved by this court by its order of October 18, 1977.

Pursuant to Section 4(c) of the Crocker Agreement, Crocker and CUFI agreed that on the due date of each United Factors' outstanding trade acceptances, they would charge the account of the factored client the amount of the trade acceptance and deposit the proceeds of that charge in a separate account.

Crocker and CUFI have not charged the accounts of the factored clients for United Factors' trade acceptances   .   .   .   and have not deposited the proceeds .   .   all in breach of the Crocker Agreement. On information and belief   .   .   .   Crocker and CUFI have released monies from the accounts of certain Client defendants to those Client defendants, who used those monies to make payments to Bank defendants   .   .   .   .

United Factors and United Merchants are entitled to an accounting of all monies

whether from UFI or CUFI—for purposes of payment on acceptances.

The expression by the joint defendants in their reply memorandum highlights the polarization of the different end results of this controversy on the merits.

"[By bringing on this cause of action and arguing for the existence of a recoverable 'fund' UFI] hoped to enhance the estate at the expense of the Bank-defendants or the Client-defendants. It proposed to argue in court that it had the right, under its factoring contracts, to charge the accounts of the Client-defendants for the amounts of the trade acceptances even though it defaulted on them, even though it had no intention of honoring them, and even if the Client-defendants subsequently paid the identical amounts to the Bank-defendants. If it prevailed on that theory, it could collect 100% of

released by Crocker and CUFI   .   .   .   and are also entitled to recover those amounts from Crocker and CUFI."

As noted earlier, Crocker and CUFI have moved for summary judgment in their favor on the merits. In short, they seek dismissal for failure of the relevant causes of action to state a claim against them.

By not objecting to this court's subject matter jurisdiction as prescribed by Section 2a(7) and Rule 915(a), by moving this court for the grant of summary judgment in their favor on the merits, and, indeed, by having become party to the court approved sale of UFI's factoring business, *In re Fabric Tree*, 426 F.Supp. 872 (S.D.N.Y.1976), aff'd 558 F.2d 1069 (2d Cir. 1977), all that has been said concerning the bank and client defendants and this court's lack of jurisdiction to deal with them, is irrelevant as to Crocker and CUFI. They have conferred jurisdiction.

But to acknowledge jurisdiction over them does not imply that in all cases where the bankruptcy court finds subject matter jurisdiction it must inevitably act to resolve the competing claims on the merits. While neither the 1898 Act nor its implementing Bankruptcy Rules carried a provision analogous to new 28 U.S.C. § 1471(d) concerning abstention by the bankruptcy court, the authority by that court to surrender its jurisdiction to another court in an appropriate case was accepted.[17] Thus, in *Thompson v.*

the amounts involved from the Client-defendants. Then, whether or not the Client-defendants made duplicate payments to the Bank-defendants, only one claim could be filed against the estate; and it would be entitled only to the percentage dividend distributed to unsecured creditors generally."

See also Jochner Affidavit, dated September 15, 1978 at ¶ 8.

17. New 28 U.S.C. § 1471(d), a part of a new twelve section Chapter 90 added to Title 28, United States Code by Section 241(a) of the Title II amendments of the 1978 bankruptcy reform legislation reads as follows:

"(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising

*Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), the Supreme Court, while recognizing the exclusive non-delegable control over property in the bankruptcy court's possession, observed that the proper exercise of that control might, where appropriate, lead that court to surrender its jurisdiction over particular controversies to other courts. The Court of Appeals here has followed this common sense approach, *e. g., Gramil Weaving Corp. v. Raindeer Fabrics, Inc.*, 185 F.2d 537 (1950), as have other Courts of Appeals, *e. g., Armstrong v. Alliance Trust Co., Ltd.*, 112 F.2d 114 (5th Cir. 1940); *Sulmeyer v. Pfohlman*, 329 F.2d 915 (9th Cir. 1964).[18]

This court in *Matter of the Stratton Group, Ltd.*, 11 CBC 187 (S.D.N.Y.1976, Babitt, *B.J.*), a case strikingly similar on its facts to those now before the court, while acknowledging its jurisdiction by consent over some of the parties to the trustee's suit, withheld the exercise of that jurisdiction so that the proper forum could determine the merits against other parties in no way brought within this court's jurisdictional reach. There, resolution of the merits in a non-bankruptcy forum could have had substantial impact on the rights of the trustee and the parties before this court. By the same token, the merits in this court could have had substantial adverse impact on the parties not before this court and in no way able to protect their rights here without potential relinquishment of their right to have the suit tried elsewhere.

Those considerations are relevant on this motion by Crocker and CUFI for judgment dismissing the fourth cause of action on the merits. If this court were to act, its findings as to Crocker and CUFI would necessarily require findings as to all the other parties, for such are the interrelationships and the reliance by all the parties on the same agreements and transactions that findings as to Crocker and CUFI must inevitably impact on the banks and clients.

Also relevant is the observation by Crocker and CUFI that if they are liable at all, that liability can only follow the extent to which plaintiffs prevail against the banks and clients.

Finally relevant is the sensible desire of this and all courts to avoid the effusion of time, judicial and litigants', and attendant expense to the latter, by trying homogeneous, multi-partied suits piecemeal.

The court concludes that so far as Crocker and CUFI are concerned, it should surrender the jurisdiction those defendants gave it to that court which will have jurisdiction over the action and all the defendants. There, if they choose, Crocker and CUFI may renew their invocation of summary judgment procedures as this court perceives no sense in holding their instant motion until the suit is finally disposed of elsewhere.

As a by the way, the court notes that this abstention in no way implies that given jurisdiction by all defendants, this court could not or would not act. From the pleadings and papers, it does not appear that the issues, as in *Thompson v. Magnolia Petroleum Co., supra*, involve "unsettled questions of state property law."

### Other Relief Sought By Bank and Client Defendants

The bank and client defendants included in their motions to dismiss for want of subject matter jurisdiction, requests going

---

under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise."

This section acknowledges that as to cases filed since October 1, 1979, a bankruptcy court may abstain, or put another way, deflect the pervasive jurisdiction conferred by new 28 U.S.C. §§ 1471(b) and (c) where that action would be appropriate. See 1 *Collier on Bankruptcy* (15th ed. 1979) ¶ 3.01[f] relevant to new 28 U.S.C. § 1471(d), and 1 *Collier on Bankruptcy* (14th

ed. 1974) ‘ 2.07 relevant to exercise of the abstention power as a matter of judicial discretion under the 1898 Act.

18. This court assumes the rationale of the cases cited to be applicable regardless of whether its jurisdiction attaches through an actual *res* in its possession and under its control, even constructively so, or whether it acquires jurisdiction by consent as here so far as Crocker and CUFI are concerned.

**303**

to a claimed lack of personal jurisdiction in this court over all of them, and for transfer of the entire dispute to a proper United States District Court in California.

The first request is denied, but it may be renewed, if appropriate, to the court which will ultimately have jurisdiction over the subject matter. For one thing, as this court has concluded that it lacks subject matter jurisdiction, its hand should be further stayed, save possibly to temporarily apply the rule of *Steelman v. All Continent Co.,* *supra,* which, as seen, it has not been asked to do.

The second request is also denied. It may be renewed, if appropriate, to the court ultimately determined to have subject matter jurisdiction.

The defense of want of jurisdiction raised by the bank and client defendants in their motions to dismiss is sustained. They are denied to the extent they sought other relief, but without prejudice to renewal, if appropriate, in another court.

The motion for summary judgment by Crocker and CUFI is denied, also without prejudice to renewal, if appropriate, in another court.

But these dispositions do not end the matter, as the granting of the bank/client motions addressed to this court's subject matter jurisdiction does not require dismissal of the complaint. Rule 915(b), 411 U.S. 1098, 93 S.Ct. 3170, 37 L.Ed.2d lxxix reads as follows:

"(b) Dismissal or Transfer. If an objection to the jurisdiction of an adversary proceeding, a contested matter, or a severable part of either, is sustained, the bankruptcy judge shall dismiss such proceeding, matter, or part thereof, or transfer it to the civil docket of the district court, as may be appropriate. On transfer pursuant to this rule, the proceeding, matter, or part thereof shall continue as if filed as a civil action in the district court on the date it was filed in the court of bankruptcy."

The plaintiffs' action is not bottomed on any of the avoidance powers described by Section 60, 11 U.S.C. (1976 ed.) § 96 (avoidance of a preferential transfer), Section 67d, 11 U.S.C. (1976 ed.) § 107d (avoidance of a fraudulent transfer), Section 70d, 11 U.S.C. (1976 ed.) § 110d (avoidance of some post-petition transfers) and Section 70e, 11 U.S.C. (1976 ed.) § 110e (avoidance of some fraudulent transfers). Jurisdiction over the merits of such actions has been conferred by Congress on state courts and the United States District Courts regardless of the absence of the usual prerequisites for jurisdiction in the latter which are "courts of bankruptcy" under Section 1(10), 11 U.S.C. (1976 ed.) § 1(10). Sections 60b (last sentence), 67e and 70e(3) make this clear, and it is too well settled for further discussion or citation of authority.

The action here is a not so simple contract action. Jurisdiction in a United States District Court should lie as the elements of diversity of citizenship and amount in controversy seem to be present. But this court may not transfer to just any federal court; nor may it transfer to a state court, for Rule 915(b) is clear on this point.

A proper reading of Rule 915(b) is that this bankruptcy court may only transfer to the federal court in this district where the Chapter XI petitions were filed with the Clerk of that court on July 12, 1977, if, of course, such court would, as here, seem to have jurisdiction. Once there, the defendants may, if so advised, renew their motions denied by this court.

On the other hand for whatever reasons, plaintiffs may prefer dismissal. The choice is theirs.

Accordingly, let an order be submitted by plaintiffs consonant with this court's disposition of the various motions, which order is to include a decretal paragraph providing for dismissal of the complaint or for its transfer to the civil docket of the United States District Court for this District. See Rule 79, F.R.Civ.P. No costs are allowed.